■ In the Matter of MOHINDER S. GOOMAR, Petitioner, v GORDON AMBACH, as Commissioner of Education of the State of New York, et al., Respondents.—Mikoll, J. Proceeding pursuant to CPLR article 78 (initiated in this court pursuant to Education Law § 6510 [4]) to review a determination of

respondent Commissioner of Education which revoked petitioner's license to practice medicine in New York.

Petitioner, a licensed doctor since 1971, was charged with 13 specifications of professional misconduct, fraudulent practice of medicine and incompetent practice of medicine. Four female patients, denominated A, B, C and D, alleged that petitioner improperly touched their breasts during office visits. A hearing was held before a five-member committee of respondent State Board for Professional Medical Conduct.

Dr. Frederick C. Lane, an expert called by the Office of Professional Medical Conduct (OPMC), testified that if the breast examinations performed on patients A, B and C were as they were described by said patients, they did not conform to accepted medical norms. Dr. Lane described a proper breast examination and indicated that such an examination is an accepted part of the general examination which should be done in anticipation of surgery where a general anesthetic will be given.

Patient D testified that she had several appointments with petitioner regarding pressure in her ears. As a part of the treatment, she underwent several tests, including a sophisticated procedure to test for allergies. On April 9, 1984, she returned to petitioner's office to review the test results during regular office hours. Petitioner asked her to return at 6:00 P.M., after office hours, so that they could discuss her problem further and without interruption. During this session, petitioner told her to sit on the couch. He sat beside her and began to caress her neck, directed her to put her head on his lap and began caressing her breasts. Petitioner asked patient D to go to bed with him; she refused. They continued to talk for about an hour. Patient D claimed that she feared petitioner since there was no one else in the office. Before leaving the couch, petitioner placed his hand on the inside of patient D's upper thigh.

Petitioner contended that as to patients A and B, he examined their breasts in the manner customarily followed in the profession, visually while the patient was in a seated position, and then manually while the patient was in a supine position. Each examination was related to contemplated surgery that these patients were to undergo and to which they had given consent. As to patient C, petitioner claimed that he did no breast examination because another physician had recently given her a breast examination. He did examine her chest with a stethoscope. Petitioner also confirmed Dr. Lane's testimony that it was an accepted norm in the profession and a

requirement of the Saratoga Hospital, where the surgeries were to take place, that patients first undergo general physical examinations before surgery, including breast and abdominal examinations. Petitioner testified that one of his staff nurses or his assistant, Linda Castracani, was always present during general physical examinations. Castracani testified that she was present during general examinations and that petitioner always conducted them in the customary manner. She contradicted patient C's allegations that petitioner had felt her breasts through her clothing. Although Castracani specifically recalled patient C, she testified from office records regarding patients A and B.

As to patient D, petitioner confirmed that he met with her for about 1½ hours with no one else present. He denied patient D's allegations of seduction. He said that he met with patient D to get to the root of her ear pressure problem because his clinical examinations failed to disclose a physical cause for its persistence. Petitioner believed that patient D had a temporomondibular joint disorder which may have had a psychosomatic basis. He opined that patient D is disturbed and that she manufactured the allegations against him; he said that the story was a part of a plan to secure a favorable result in patient D's $4,000,000 civil lawsuit commenced against him. Petitioner testified that he had asked patient D (who was 18 years old at the time) to have her parents communicate with him after their April 9, 1984 meeting. This did not occur and he was sued by patient D within a month.

The hearing disclosed that patient D's complaints against petitioner were highly publicized and, as a result, patients A, B and C came forward and the disciplinary proceedings resulted. Petitioner presented evidence that patient C had made a complaint against him to the Saratoga Hospital administration which was subsequently referred to the Saratoga County Medical Society. A committee was then formed to review patient C's complaint. A member of said committee testified at the hearing that the committee accepted petitioner's written explanation over that of patient C, and therefore deemed the matter concluded without any evidentiary hearings.

There were several references in the hearing about complaints made to the police regarding the underlying events. Patient A related that she made her complaint to the police some five years after the event; she did so to help patient D after hearing of patient D's lawsuit on television. Patient B made the second police complaint. She claimed to have dictated a statement of her complaint to a friend who was to file

it with the Police Department. However, no criminal proceedings resulted from either of these police complaints. Finally, petitioner's counsel himself brought up the fact that the accusations of patient D were heard by the Saratoga County Grand Jury. Although the Hearing Committee disallowed inquiry as to the result of these Grand Jury proceedings, petitioner's counsel forcefully argued before the Hearing Committee that failure to find probable cause of criminality by a Grand Jury of 16 to 23 people would assist the Hearing Committee in arriving at a decision with respect to patient D's allegations. The intimation that the Grand Jury found no cause for action was made abundantly clear.

The Hearing Committee issued a report finding patients A, B, C and D to be credible and finding petitioner's testimony not believable. By unanimous vote, the Hearing Committee sustained 11 of the 13 specifications in the statement of charges and recommended that petitioner's license to practice medicine be revoked and never restored. Ultimately, after administrative review, respondent Commissioner of Education revoked petitioner's license to practice medicine.

In this proceeding, petitioner contends that the findings of professional misconduct, fraudulent practice of medicine and negligent or incompetent practice of medicine are not supported by substantial evidence. We find that a review of the complaining witnesses' testimony, if believed, provided substantial evidence *(see, Matter of Libra v University of State of N. Y.,* 124 AD2d 939, *lv denied* 70 NY2d 603). Deciding which witnesses to believe and how much weight to accord their testimony raised factual questions to be resolved by the trier of facts. The reviewing court must defer to the administrative agency's resolution of those conflicts and differences unless there is no rational basis for the decision *(Matter of Pell v Board of Educ.,* 34 NY2d 222).

Petitioner contends that the exclusion of evidence regarding the Grand Jury's action violated the doctrine of res judicata. We disagree. Evidence of the Grand Jury's action did not prove or disprove any violation of the Education Law. It was properly excluded *(see, Matter of Afif v Commissioner of Educ.,* 134 AD2d 679). We have already noted that petitioner's counsel did in fact make clear, by implication, that the Grand Jury returned a no bill.

Petitioner contends that permitting references to criminal proceedings denied petitioner a fair hearing. Such references are advisedly not appropriate in a disciplinary proceeding and may contaminate such proceedings. Here, however, they were

not of the significance attributed to like references made in *Matter of Afif v Commissioner of Educ. (supra).* Patient A's complaint was stale, having been made five years after the event. Patient B's complaint was never personally made by her and it is questionable if it was ever lodged on her behalf. These references, if anything, were more favorable to petitioner than to OPMC. They were certainly not indicative of outraged patients who pursued their recourses. We cannot say that petitioner was deprived of a fair hearing because of them.

We find no merit to the other issues raised by petitioner.

Determination confirmed, and petition dismissed, without costs. Mahoney, P. J., Casey, Mikoll, Yesawich, Jr., and Harvey, JJ., concur.