CAROLYN D. STEVENSON, Respondent, v MOHINDER GOOMAR, Appellant.

Third Department, July 20, 1989

APPEARANCES OF COUNSEL

*Carter, Conboy, Bardwell, Case, Blackmore & Napierski (Dianne Bresee Mayberger* of counsel), for appellant.

*Kindlon & Willsey, P. C. (Terence L. Kindlon* of counsel), for respondent.

**OPINION OF THE COURT**

CASEY, J. P.

In this tort action, plaintiff seeks to recover damages from defendant, a physician, for injuries allegedly sustained as a result of assault and battery, false imprisonment and medical malpractice. All three causes of action are based upon allegations that defendant sexually assaulted plaintiff during a visit to his office as a patient. In addition to this action, plaintiff filed a criminal complaint and a complaint with the State Board for Professional Medical Conduct. No criminal charges against defendant resulted from the criminal complaint, but based upon plaintiff's testimony at a hearing held pursuant to Public Health Law § 230, defendant was found guilty of professional misconduct and his license to practice medicine was revoked.[1] The determination was confirmed by this court *(Matter of Goomar v Ambach,* 136 AD2d 774, *appeal dismissed* 72 NY2d 908, *lv denied* 73 NY2d 701).

Seeking to invoke the doctrine of collateral estoppel based upon this administrative determination, plaintiff moved for partial summary judgment on the issue of liability on her medical malpractice cause of action. Concluding that there was a sufficient identicality of the issues and that defendant had been accorded a full and fair opportunity to contest those issues, Supreme Court held that defendant was barred from relitigating the issues decided in the administrative determination. Accordingly, plaintiff was granted summary judgment on the issue of liability on her medical malpractice cause of action.

We agree that the facts and circumstances of this case can

---

1. Due to the publicity generated by plaintiff's criminal complaint, three other former patients filed complaints against defendant with the State Board for Professional Medical Conduct and testified at the hearing.

be fit into the current boundaries of the general principles of collateral estoppel applicable to administrative determinations *(see, Ryan v New York Tel. Co.,* 62 NY2d 494). In particular, it appears that the "operative facts" were established by the determination *(see, Matter of Engel v Calgon Corp.,* 114 AD2d 108, *affd* 69 NY2d 753), and defendant actively sought to defend his medical license during the course of the administrative proceedings. Nevertheless, we are of the view that this is not an appropriate case for invocation of the doctrine of collateral estoppel.

Although the Court of Appeals has prescribed certain general principles applicable in determining whether to invoke the doctrine of collateral estoppel in cases involving administrative determinations, the court has:

"consistently emphasized that these principles are not to be mechanically applied as a mere checklist. * * *

"In the end, the fundamental inquiry is whether relitigation should be permitted in a particular case in light of what are often competing policy considerations, including fairness to the parties, conservation of the resources of the court and the litigants, and the societal interests in consistent and accurate results. No rigid rules are possible, because even these factors may vary in relative importance depending on the nature of the proceedings" *(Staatsburg Water Co. v Staatsburg Fire Dist.,* 72 NY2d 147, 153).

In the absence of any preclusive effect of the administrative determination at issue herein, defendant would have the right to demand a jury trial of the factual issues raised by the allegations contained in plaintiff's malpractice cause of action (NY Const, art I, § 2). In its decisions concerning the preclusive effect of administrative determinations in subsequent civil actions, the Court of Appeals has not addressed the competing policy considerations involved where a party seeks to invoke his right to a jury trial in the subsequent civil action.[2] The court did, however, make reference to a civil litigant's right to a jury trial in *Gilberg v Barbieri* (53 NY2d 285, 293), as a factor in its decision not to give preclusive effect to a prior

---

2. It appears that the issue has not been raised at the Court of Appeals level. In *Ryan v New York Tel. Co.* (62 NY2d 494), for example, the party precluded from relitigating the factual issues decided by the prior administrative determination had affirmatively sought the administrative ruling *(see also, Allied Chem. v Niagara Mohawk Power Corp.,* 72 NY2d 271, *cert denied* — US —, 109 S Ct 785 [where both parties to the civil action had requested the prior administrative hearing]).

City Court harassment conviction. In *Samhammer v Home Mut. Ins. Co.* (120 AD2d 59, 63-64, n 3), this court recognized the significance of a civil litigant's right to a jury trial in a case similar to the one at bar, but we declined to address the issue since it had not been raised. Defendant herein has affirmatively and vigorously raised the issue and it must, therefore, be addressed.

An argument can be made that a civil litigant's right to a jury trial is of little significance in the area of collateral estoppel since preclusive effect has been given to the results of prior litigation before a court without a jury *(see, Gilberg v Barbieri, supra,* at 303-304 [Meyer, J., dissenting]). There are, however, substantial differences between a nonjury trial and an administrative proceeding under Public Health Law § 230 (10), which, in our view, make such an argument inapplicable to this case. A party to a nonjury trial would still have the right to the broad disclosure guaranteed by CPLR article 31 and the right to a verdict based on legally admissible evidence. In the administrative hearing herein, however, defendant was accorded certain basic procedural safeguards such as the right to present evidence and cross-examine witnesses, but there was no disclosure other than notice of the charges, and the rules of evidence were inapplicable *(see,* Public Health Law § 230 [10]). Of equal significance is the scope of review available in the two settings. On appeal from a nonjury trial, the Appellate Division has the broad power to review the facts and grant the judgment which upon the evidence should have been granted by the trial court *(see,* CPLR 5501; *Arnold v State of New York,* 108 AD2d 1021, *appeal dismissed* 65 NY2d 723; *see also, Northern Westchester Professional Park Assocs. v Town of Bedford,* 60 NY2d 492). The Appellate Division's scope of review of an administrative agency's quasi-judicial determination is, in contrast, very limited *(see,* CPLR 7803; *Matter of Pell v Board of Educ.,* 34 NY2d 222). As this court said in reviewing the administrative determination at issue herein, "[t]he reviewing court must defer to the administrative agency's resolution of those conflicts and differences [in the complaining witnesses' testimony] unless there is no rational basis for the decision" *(Matter of Goomar v Ambach,* 136 AD2d 774, 777, *supra).*

In addition to the foregoing factors, it is also significant that defendant did not choose to litigate the matter at the administrative level *(see, Ryan v New York Tel. Co.,* 62 NY2d 494, 501, *supra).* As in *Gilberg v Barbieri* (53 NY2d 285, 293, *supra),* it

was plaintiff who had the initiative, filing the complaint which led to the investigation and the charges of misconduct. Defendant's participation was prompted solely by his need to protect and defend his license to practice medicine. A ruling in favor of plaintiff herein would effectively make the administrative agency in a disciplinary proceeding the ultimate fact finder, with only limited judicial review, in any tort action arising out of the alleged misconduct, thereby depriving a defendant of a number of valuable rights traditionally associated with civil actions, including the constitutional right to a trial by jury. Plaintiff's use of collateral estoppel offensively to establish liability in the circumstances presented by this case would not comport with the underlying fundamental fairness aspects of the doctrine *(see, Matter of Halyalkar v Board of Regents,* 72 NY2d 261, 269-270; Restatement [Second] of Judgments § 29, comment d [1982]).

We conclude, therefore, that where, as here, a party to a civil action seeks to invoke his right to a jury trial and he has not initiated or otherwise affirmatively sought to litigate the matter at the administrative level, fundamental fairness and the policy considerations referred to by the Court of Appeals in *Staatsburg Water Co. v Staatsburg Fire Dist.* (72 NY2d 147, 153, *supra)* and *Gilberg v Barbieri* (53 NY2d 285, 292-294, *supra)* require that preclusive effect not be given to the administrative determination. To conclude otherwise would result in the substantial erosion of rights far more fundamental and important than the concepts of finality and judicial economy served by the doctrine of collateral estoppel. Accordingly, plaintiff's motion should be denied.

MIKOLL, J. (concurring). In my view there is merit in defendant's argument that the failure to charge him with medical malpractice in the statement of charges in the administrative proceeding under the circumstances presented here precludes a finding that the issue of medical malpractice was "fully aired" *(see, Allied Chem. v Niagara Mohawk Power Corp.,* 72 NY2d 271, 277, *cert denied* — US —, 109 S Ct 785).

Claims of unprofessional conduct, moral unfitness, fraudulent practice of medicine and willful harassing, abusing or intimidating a patient were set forth against defendant with respect to plaintiff in the statement of charges filed in the administrative proceeding. However, as to the three other patients involved, defendant was specifically charged with negligence and/or incompetence in the practice of medicine.

In fairness, defendant should not be found guilty of committing an act with which he was not charged by the State Board for Professional Medical Conduct. Not only was there the failure to charge defendant with malpractice, but there was also the failure to offer expert medical testimony with respect to the treatment rendered plaintiff, while such testimony was presented with respect to the treatment rendered the three other patients. In light of these failures and the procedures followed at the hearing, it cannot be said, in my view, that the issues decided at the administrative hearing are identical to those raised in plaintiff's instant medical malpractice claims *(see, Matter of Rockaway Care Center v Axelrod,* 134 AD2d 805, 806; *cf., Matter of Clayton v Dominguez,* 134 AD2d 345, 346).

Defendant has satisfied his burden of demonstrating that in these circumstances he was not afforded a full and fair opportunity in the earlier administrative proceeding of litigating the issues concerning plaintiff's present claim of medical malpractice *(see, Staatsburg Water Co. v Staatsburg Fire Dist.,* 72 NY2d 147, 153-154; *Kaufman v Lilly & Co.,* 65 NY2d 449, 456). Significantly, the dissent cites to no authoritative case in this jurisdiction that compels the conclusion that the sexual impropriety involving plaintiff in the circumstances of this case constituted malpractice as a matter of law, nor that it was so clear that expert testimony was not required. Accordingly, I concur in the result reached by the majority.

LEVINE, J. (dissenting). I respectfully dissent. The majority concedes that "the facts and circumstances of this case can be fit into the current boundaries of the general principles of collateral estoppel applicable to administrative determinations". With this I agree. The facts of defendant's misconduct were necessarily determined in the prior disciplinary proceeding by the State Board for Professional Medical Conduct (hereinafter the Board) and the Commissioner of Education (hereinafter the Commissioner). The Board's Hearing Committee explicitly rejected defendant's testimony and accepted plaintiff's testimony, finding "beyond a shadow of a doubt" that defendant "harmed, abused and intimidated" plaintiff. The findings were that plaintiff had a series of appointments with defendant in which he was treating her for ear problems. On April 9, 1984 she had an afternoon appointment with defendant. He examined her ears, nose and throat and asked her to return at 6:00 P.M. to discuss her allergies, explaining

that he was too busy to take the time that afternoon. When she returned to his office at 6:00 P.M., no one else was there. He escorted her to an examining room, sat down on a couch with her and made explicit physical and verbal sexual advances, including touching her breasts and upper thigh, which she initially was afraid to resist.

The foregoing facts were actually placed in issue in what unquestionably was a quasi-judicial hearing during which defendant had a full and fair opportunity to litigate under appropriate procedural safeguards and a preponderance of evidence standard of proof *(see,* Education Law § 6510-a [1]; Public Health Law § 230 [10] [f]). Accordingly, there is no reason why the administrative findings of the Board and the Commissioner in the final determination of defendant's disciplinary proceeding should not be given collateral estoppel effect *(see, Allied Chem. v Niagara Mohawk Power Corp.,* 72 NY2d 271, 276-277, *cert denied* — US —, 109 S Ct 785).

The majority nevertheless rejects giving preclusive effect to the findings of the Board and the Commissioner on the ground of fundamental fairness. Three factors are cited by the majority in concluding that it would be unfair to preclude defendant from relitigating the facts of his professional misconduct. First, it is pointed out that estopping defendant from relitigating the facts of his misconduct would deprive him of a jury determination of the factual issues. Second, this deprivation is made more unfair where, as here, the prior litigation was before an administrative body instead of a court sitting without a jury, because there is no right to pretrial discovery in an administrative proceeding and the scope of judicial appellate review is narrower. Finally, it is argued that the unfairness is further aggravated by the fact that defendant did not initiate the prior administrative proceeding, and thus had no free choice but to litigate in the administrative forum.

Since there is no dispute whatsoever that the disciplinary proceedings before the Board were quasi-judicial, and that the factual issues in the present suit and in the administrative hearing are identical, the reasons stated for denying plaintiff's motion all relate to the second prong of the test for applying collateral estoppel, i.e., whether the party against whom estoppel is sought had "a full and fair opportunity to contest the decision now said to be controlling" *(Schwartz v Public Adm'r of County of Bronx,* 24 NY2d 65, 71; *see, Gilberg v Barbieri,* 53 NY2d 285, 292). The Court of Appeals has repeatedly abjured a formalistic approach to answering this question, emphasiz-

ing that it involves a "practical inquiry into 'the realities of litigation' " *(Gilberg v Barbieri, supra,* at 292; *see, Staatsburg Water Co. v Staatsburg Fire Dist.,* 72 NY2d 147, 153).

In citing what it means by "practical realities", the Court of Appeals has mentioned such factors as the size and importance of the claim, the nature of the prior forum, the use of initiative, competence of counsel, the availability of new evidence and the foreseeability of future litigation *(Ryan v New York Tel. Co.,* 62 NY2d 494, 501; *Gilberg v Barbieri, supra,* at 292; *Schwartz v Public Adm'r of County of Bronx, supra,* at 72). In general, the factors all relate to the fullness of the opportunity to litigate the issues in the prior forum of the party proposed to be bound by the prior adjudication, and that party's practical incentive to fully litigate therein. The Restatement (Second) of Judgments, from which it can fairly be said the modern New York res judicata doctrine in all of its aspects has sprung *(see, e.g., Matter of Reilly v Reid,* 45 NY2d 24, 29-30), takes exactly the same approach in dealing with the application of collateral estoppel to prior administrative determinations: "The first consideration is procedural. The essential issue is a comparison of the quality and intensiveness of the opportunity to litigate, and the incentive to litigate, in the original litigation as compared to the opportunity and incentive in the second litigation. *If the prior opportunity and incentive to litigate the claim or issue in question were substantially the same as would have existed had the matter been adjudicated in the second forum, the procedural prerequisites exist for normal application of the rules of res judicata.* The comparison of procedures should focus on the practical aspects of the procedures involved and not simply on matters of form. For example, proof-taking in an administrative or arbitration tribunal may be relatively informal but may nevertheless permit the parties to present substantially the same evidence that might be adduced through the more formal procedures characteristic of courts" (Restatement [Second] of Judgments, ch 6, Introductory Note, at 265 [1982] [emphasis supplied]). Thus, based upon these underlying criteria, it was held in both *Staatsburg Water Co. v Staatsburg Fire Dist. (supra,* at 154-155) and *Gilberg v Barbieri (supra,* at 292-293), the cases principally relied upon by the majority, that collateral estoppel should not be applied because of the absence of practical incentives of the defendants to have fully litigated the issues in the prior forums.

But *Staatsburg* and *Gilberg (supra)* cannot logically stand

for the proposition that the absence of the right to a jury trial, restrictions on pretrial discovery, the limited scope of judicial review in administrative proceedings and the fact that the party to be bound did not initiate the proceeding per se disqualify an administrative determination from being given preclusive effect. To do so would severely undercut any application of collateral estoppel as to either prior administrative or arbitration determinations. Moreover, all but one of the cited procedural differences between administrative and judicial proceedings (i.e., absence of a jury, limited discovery and scope of appellate review) clearly existed in the entire line of cases where preclusive effect had been given to a prior administrative determination in a subsequent action at law *(see, Allied Chem. v Niagara Mohawk Power Corp.,* 72 NY2d 271, *supra; Brugman v City of New York,* 64 NY2d 1011; *Ryan v New York Tel. Co.,* 62 NY2d 494, *supra).* Nor should the absence of free choice of defendant to participate in the disciplinary proceeding be decisive *(see,* Restatement [Second] of Judgments § 29, comment d [1982]). Making these procedural differences controlling is, in effect, to employ the kind of formalistic approach to collateral estoppel that the Court of Appeals has repeatedly rejected. Of course, there may be instances when other differences in a given case between the administrative body and a court militate against the fairness of applying collateral estoppel to a prior administrative determination, such as whether the agency was acting in a truly objective adjudicatory capacity or whether it was interjecting policy considerations subject to change *(see, Allied Chem. v Niagara Mohawk Power Corp., supra,* at 277). Suffice it to say that no such other differences have been cited to us here.

Examining, then, the prior proceeding by the practical realities of defendant's full and fair opportunity in the disciplinary proceeding to contest the issue of his misconduct, the record of that proceeding which we have already reviewed certainly establishes that he vigorously contested the charges, through introducing evidence in his defense and cross-examination of opposing witnesses, and fully participated and was represented by competent counsel at all stages. If anything, his incentive to litigate the issues was greater in the prior proceeding, in which his license to practice medicine was at stake, than it is in the instant malpractice case. Moreover, the present suit was not only foreseeable when the disciplinary charges against defendant were pending, it was actually known to exist. Indeed, in the disciplinary proceeding, defen-

dant attacked plaintiff's credibility on the basis of her having already brought this action *(see, Matter of Goomar v Ambach,* 136 AD2d 774, 776, *appeal dismissed* 72 NY2d 908, *lv denied* 73 NY2d 701)*. Nor has defendant suggested that any new evidence in his defense exists which was not available to him at the prior proceeding. In short, defendant has not met his burden of showing that he lacked a full and fair opportunity to contest the facts of his misconduct toward plaintiff, and the findings of the Board and the Commissioner should, therefore, be given preclusive effect.

The findings of the Board and the Commissioner established that a doctor-patient relationship existed between plaintiff and defendant, that plaintiff was present at defendant's office for medical treatment and that defendant's sexual abuse of plaintiff occurred while he purportedly was giving her treatment and medical advice. In essence, defendant was fully and finally adjudicated by the Board and the Commissioner as having harmed plaintiff emotionally by exploiting the doctor-patient relationship and the trust and confidence one has in one's physician, all while actually in the course of treating her physical ailment. Defendant's sexual misconduct toward plaintiff was only occasioned because of and was inextricably involved with his professional treatment of her and, thus, can properly be considered malpractice *(see, Bleiler v Bodnar,* 65 NY2d 65, 72; *Ross v Community Gen. Hosp.,* — AD2d —, — [May 4, 1989])*.

Sexual exploitation of a patient during or even after a course of treatment, the harmful effects of which are by now well recognized and unanimously condemned within the health professions, is a clear violation of the duty of care the physician owes a patient and, thus, constitutes malpractice even if the sexual conduct was not itself done under the guise of treatment *(Noto v St. Vincent's Hosp. & Med. Center,* 142 Misc 2d 292, 296; *Hoopes v Hammargren,* 102 Nev 425, 725 P2d 238; *Wall v Noble,* 705 SW2d 727 [Tex]; Adams, *Sex with Patients: Is it Malpractice?,* 23 Trial 58 [June 1987]; *see also, Greenberg v McCabe,* 453 F Supp 765, *affd* 594 F2d 854, *cert denied* 444 US 840; *cf., Roy v Hartogs,* 85 Misc 2d 891, 892; *Atienza v Taub,* 194 Cal App 3d 388, 239 Cal Rptr 454). Indeed, in the same disciplinary hearing, defendant's similar sexual abuse of three other patients was found to have constituted acts of professional *incompetence,* i.e., malpractice. Even without such a finding by the Board's professional panel, the impropriety and potential harm of defendant's conduct, by its

very nature, is so clear that expert testimony is not required to establish the malpractice (see, *Hammer v Rosen,* 7 NY2d 376, 380). Certainly, no contrary evidence was submitted by defendant on the motion.

Since proof of acts of defendant constituting malpractice were submitted on plaintiff's motion, which he was precluded from contesting again as a result of the prior administrative determination, I would affirm Supreme Court's granting of partial summary judgment on the issue of liability.

WEISS and HARVEY, JJ., concur with CASEY, J. P.; MIKOLL, J., concurs in a separate opinion; LEVINE, J., dissents and votes to affirm in a separate opinion.

Order modified, on the law, with costs to defendant, by reversing so much thereof as granted plaintiff's motion for partial summary judgment; said motion denied; and, as so modified, affirmed.