**TEMPLE OF THE LOST SHEEP INC., a/k/a Action Committee to Help the Homeless Now, and Henry Jerome Mackey, Plaintiffs–Appellants,**

v.

**Robert ABRAMS, Attorney General of the State of New York, New York News, Inc., Jack Newfield, John Davis, Thomas Whelan and Jill Laurie Goodman, Defendants–Appellees.**

No. 1103, Docket 90–7981.

United States Court of Appeals, Second Circuit.

Argued Feb. 20, 1991.

Decided April 5, 1991.

James Roberson Jr., New York City, for plaintiffs-appellants.

Kevin W. Goering, New York City (Coudert Brothers, P. Rivka Schochet, of counsel), for defendants-appellees New York News, Inc. and Jack Newfield.

William K. Sanders, New York City, Asst. Atty. Gen., for the State of New York (Robert Abrams, Atty. Gen. of the State of New York, of counsel), for defendants-appellees Robert Abrams and Jill Laurie Goodman.

Before FEINBERG, TIMBERS and MINER, Circuit Judges.

FEINBERG, Circuit Judge:

This fiercely contested litigation, which has been conducted in both federal and state courts since the fall of 1988, involves the interaction of the doctrines of abstention and collateral estoppel. Plaintiffs Temple of the Lost Sheep Inc., a/k/a Action Committee to Help the Homeless Now (the Temple), and Henry Jerome Mackey appeal from a judgment of the United States District Court for the Eastern District of New York, Arthur D. Spatt, J., dismissing their complaint against Robert

Abrams, Attorney General of the State of New York, Assistant Attorney General Jill Laurie Goodman (the State defendants), New York News, Inc., Jack Newfield (the Daily News defendants), John Davis and Thomas Whelan. The district court dismissed appellants' claims arising under 42 U.S.C. § 1983 because a state court proceeding had resolved against appellants issues central to those claims, and alternatively, as against the State defendants, those claims were barred by qualified immunity. The district court also found that appellants' claims arising under 42 U.S.C. § 1985(3) failed to state a claim under Fed. R.Civ.P. 12(b)(6). The court then dismissed the remaining state-law claims for lack of subject matter jurisdiction. For the reasons given below, we affirm.

## Background

According to the complaint, the Temple operated as an unincorporated religious society from approximately 1960 to 1980 and was thereafter incorporated pursuant to New York's Religious Corporation Law. Appellant Mackey is a founder of the Temple and its "titular head." One of the Temple's stated objectives is "to provide a haven wherein persons who believe themselves to be 'Lost Souls' may find a temporary refuge, during which time they may seek their own Spiritual regeneration." Towards that end, the Temple maintains a shelter for homeless men in Queens, New York. Those residing at the shelter must comply with the Temple's goals and rules. In particular, members are required to "solicit alms from the donating public" by begging, and they then turn over most of those proceeds to Mackey and the Temple.

Defendants John Davis and Thomas Whelan are homeless persons who were admitted to the Temple shelter in 1988. They later defected from the organization and contacted defendant Jack Newfield, at that time a staff writer and regular columnist for the Daily News newspaper published by defendant New York News, Inc. After Davis and Whelan told Newfield that as a condition for staying in the shelter, the Temple required its members to beg and then turn over the proceeds to Mackey,

Newfield arranged to have Davis and Whelan tell their story to defendant Attorney General for possible investigation.

The Attorney General began an administrative investigation to determine whether the Temple was engaging in fraud under the guise of charitable activity in violation of various provisions of New York statutory law, and accordingly issued subpoenas in the fall of 1988, through defendant Assistant Attorney General Jill Laurie Goodman, to be served on several "John Doe" Temple members and Mackey. In the interim, Newfield wrote two stories in the Daily News, which recounted Mackey's criminal past, reported his personal wealth, described the Temple's operations and the experiences of Davis and Whelan, cautioned passersby to "beware of Jerome Mackey's upside-down water coolers" and reported the issuance of the Attorney General's subpoenas.

Without complying with the subpoenas, appellants commenced this suit in the Eastern District in November 1988, alleging various violations of their constitutional rights under 42 U.S.C. § 1983 and a conspiracy to violate their rights under section 1985(3). Appellants alleged that pursuant to an overall conspiracy to financially cripple the Temple, defendants agreed that a series of damaging articles on the Temple and Mackey would be published in the Daily News and that the Attorney General would undertake an investigation of their activities, including issuance of the subpoenas at issue. The complaint also alleged that Mackey had been on the Attorney General's "hit list" since the 1960's as evidenced by various investigations to which Mackey or his businesses had been subjected. See, e.g., United States v. Corr, 543 F.2d 1042 (2d Cir.1976) (employee of Jerome Mackey's Judo Inc. convicted of securities fraud and other crimes with regard to financing of the business); United States v. Mackey, 405 F.Supp. 854 (E.D.N.Y.1975) (Mackey convicted of mail fraud relating to his operation of Mackey Distributors, Inc.). Appellants sought injunctive relief from further harassment and compensatory and

punitive damages for the alleged constitutional deprivations.

Appellants also moved for a preliminary injunction prohibiting the Attorney General from continuing his investigation and requiring the Daily News to give "equal space" to appellants in that newspaper. In December 1988, Judge Reena Raggi denied the motion on the grounds, among others, that the court would probably abstain from hearing the case, and that plaintiffs had not established a likelihood of success on the merits.

At that time, the Temple and Mackey had still not complied with the subpoenas, and the Attorney General moved before Justice Edward Greenfield in Supreme Court, New York County, for an order to compel compliance. The Temple and Mackey cross-moved to dismiss the proceedings and to quash the subpoenas in part on the ground that the Attorney General issued the subpoenas pursuant to a conspiracy to deprive the Temple and Mackey of their constitutional rights. While these motions were pending in state court, the State and Daily News defendants moved in the district court before Judge Raggi for dismissal of appellants' complaint or in the alternative for abstention from further proceedings until the state court ruled on the validity of the subpoenas. In June 1989, Judge Raggi granted the motion, and stayed this action pending the conclusion of the related state court proceeding.

Appellants thereafter moved for Judge Raggi's recusal on the ground that she was biased. The judge denied the motion in June 1989. The Temple and Mackey appealed from this order and also sought a writ of mandamus in this court compelling the judge to recuse herself. This court dismissed the appeal, and also denied the petition for mandamus.

In addition, according to appellants, they moved in the state court to prevent Justice Greenfield, in deciding the motions pending before him, from making any determination regarding appellants' federal claim of conspiracy. In January 1990, however, Justice Greenfield ruled on the motions before him, granting the Attorney General's motion to compel compliance with the subpoenas and denying appellants' cross-motions to quash and dismiss, thereby rejecting appellants' conspiracy claim. Appellants initially appealed Justice Greenfield's decision to the Appellate Division, First Department, but later withdrew their state appeal and apparently complied with the subpoenas.

Appellants also returned to the Eastern District and moved to vacate Judge Raggi's order staying the federal proceedings. The case was reassigned to Judge Spatt, and in June 1990 he found that the state court action had been concluded, and allowed the federal action to proceed. Subsequently, defendants moved to dismiss the federal complaint, and Judge Spatt granted that motion in September 1990 in part on the ground that appellants' section 1983 claims were barred by the doctrine of collateral estoppel. This appeal followed.

### Discussion

#### A. *Abstention and Reservation of Federal Claims*

■ Appellants contend that the district court erred in applying collateral estoppel to their section 1983 claims, because they intentionally avoided raising those claims in the state court so as to reserve them for determination in the district court under the doctrine of *England v. Louisiana State Board of Medical Examiners*, 375 U.S. 411, 84 S.Ct. 461, 11 L.Ed.2d 440 (1964). The plaintiffs in *England* had commenced an action in federal court, alleging that a state statute violated their federal constitutional rights. *Id.* at 412–13, 84 S.Ct. at 463. Plaintiffs also claimed that the state law did not apply to them. The district court then abstained and remitted plaintiffs to the state courts on the ground that a state court decision interpreting the statute could moot the constitutional claims. *Id.* at 413, 84 S.Ct. at 463. Plaintiffs voluntarily submitted both the state law and constitutional claims to the state court, which decided them adversely to plaintiffs. *Id.* at 413–14, 84 S.Ct. at 463–64. The Supreme Court held that plaintiffs could have reserved their federal claims,

and thereby avoid preclusion, by informing the state court that they intended to return to federal court to pursue the federal claims should the state court rule against them on the question of state law. *Id.* at 421–22, 84 S.Ct. at 467–68. According to appellants, under *England* a party is always able to reserve its federal claims whenever a district court abstains, and thus the district court here erred by precluding appellants from pursuing their "reserved" federal claims. We disagree.

It is clear that in *England*, the federal court abstained under the doctrine of *Railroad Commission v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941) (*Pullman* abstention), which "involves an inquiry focused on the possibility that the state courts may interpret a challenged state statute so as to eliminate, or at least to alter materially, the constitutional question presented." *Ohio Bureau of Employment Services v. Hodory*, 431 U.S. 471, 477, 97 S.Ct. 1898, 1902, 52 L.Ed.2d 513 (1977). By contrast, the district court in this case abstained under the authority of *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971) (*Younger* abstention), which is warranted when there is an ongoing state proceeding involving an important state interest that provides the federal plaintiff with an adequate opportunity for judicial review of its federal constitutional claims. *Christ the King Regional High School v. Culvert*, 815 F.2d 219, 224 (2d Cir.), cert. denied, 484 U.S. 830, 108 S.Ct. 102, 98 L.Ed.2d 63 (1987).

According to the Supreme Court, "[t]he holding in *England* depended entirely on this Court's view of the purpose of abstention" in a particular case. *Allen v. McCurry*, 449 U.S. 90, 101–02 n. 17, 101 S.Ct. 411, 418 n. 17, 66 L.Ed.2d 308 (1980). It is thus necessary for us to determine whether the policies behind abstention in this case require appellants to be provided with the opportunity of reserving their federal claims, recognizing of course that this was a *Younger* rather than a *Pullman* abstention. Cf. *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 606 & n. 18, 95 S.Ct. 1200, 1209 & n. 18, 43 L.Ed.2d 482 (1975).

The emphasis in *England* on a plaintiff's right to reserve its federal claims for determination in the federal court is a direct result of the purposes behind a *Pullman* abstention, because

> [w]here a plaintiff properly invokes federal-court jurisdiction in the first instance on a federal claim, the federal court has a duty to accept that jurisdiction. Abstention may serve only to postpone, rather than to abdicate, jurisdiction, since its purpose is to determine whether resolution of the federal question is even necessary, or to obviate the risk of a federal court's erroneous construction of state law.

*Allen*, 449 U.S. at 101–02 n. 17, 101 S.Ct. at 418 n. 17 (citations omitted).

Significantly, *Pullman* abstention does not necessarily involve an ongoing state proceeding. Instead, the abstention serves to allow a state proceeding to address the state-law issues in deference to the state court's superior ability to determine unsettled questions of state law. *Pullman* abstention, as stated in *England*, essentially recognizes that by so deferring to the state courts, a federal court may not relieve itself of the jurisdictional duty it faced in the first instance. *Younger* abstention, however, gives rise to a different set of considerations, since it involves two pending proceedings and thus conflicting jurisdictional duties between the state and federal tribunals with the attendant possibilities that maintenance of the federal action will either result in duplicative legal proceedings or a disruption of the state proceedings. Cf. *Steffel v. Thompson*, 415 U.S. 452, 461–62, 94 S.Ct. 1209, 1216–17, 39 L.Ed.2d 505 (1974). The situation is therefore not one of merely postponing federal jurisdiction as is the case in *Pullman* abstention, but instead "contemplates the outright dismissal of the federal suit, and the presentation of all claims, both state and federal, to the state courts." *Gibson v. Berryhill*, 411 U.S. 564, 577, 93 S.Ct. 1689, 1697, 36 L.Ed.2d 488 (1973).

The rationale for allowing reservation of a federal claim in a state court proceeding following *Pullman* abstention in a federal

court is thus not applicable to *Younger* abstention; this indicates that reservation is not available in the latter case. Indeed, this conclusion is compelled by the fact that *Younger* abstention derives from the recognition

> that a pending state proceeding, in all but unusual cases, would provide the federal plaintiff with the necessary vehicle for vindicating his constitutional rights, and, in that circumstance, the restraining of an ongoing [state proceeding] would entail an unseemly failure to give effect to the principle that state courts have the solemn responsibility, equally with the federal courts to guard, enforce, and protect every right granted or secured by the Constitution of the United States.

*Steffel*, 415 U.S. at 460–61, 94 S.Ct. at 1216 (citation omitted).

If, as appellants argue, a federal plaintiff could avoid the preclusive effects of the related state court proceeding by reserving its federal claims after the federal court abstains under *Younger*, then the federal court would fail to give effect to the ability of the state court to resolve federal constitutional questions, thereby undermining one of the central purposes behind *Younger* abstention. Moreover, such an approach would result in at least partially duplicative proceedings, one of the problems that *Younger* abstention attempts to remedy. Thus, the purposes behind *Younger* abstention suggest that a federal plaintiff may be collaterally estopped by a related state court proceeding, regardless of the plaintiff's desire to "reserve" the federal claim.

■ We accordingly hold that a federal plaintiff may not avoid preclusion by reserving in the state court its federal claims following *Younger* abstention. Judge Weinfeld reached this result in *Olitt v. Murphy*, 453 F.Supp. 354, 358 (S.D.N.Y.), aff'd without opinion, 591 F.2d 1331 (2d Cir. 1978), cert. denied, 444 U.S. 825, 100 S.Ct. 46, 62 L.Ed.2d 31 (1979), and although our summary affirmance there had no precedential value, we take this opportunity to explicitly adopt Judge Weinfeld's holding. The Ninth Circuit has also reached this result. See *Beltran v. California*, 871 F.2d 777, 783 n. 8 (9th Cir.1988). Therefore, appellants' attempt, if any, to reserve their federal claims in the state court for later determination in federal court did not of itself prevent Judge Spatt from applying collateral estoppel based on Justice Greenfield's decision in the state court proceeding. The question still remains whether Judge Spatt was otherwise justified in applying that doctrine.

**B.** *The Collateral Estoppel Effects of the State Proceeding*

■ Pursuant to 28 U.S.C. § 1738, the federal courts "must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." *Migra v. Warren City School Dist. Bd. of Education*, 465 U.S. 75, 81, 104 S.Ct. 892, 896, 79 L.Ed.2d 56 (1984). We have accordingly given a state court judgment preclusive effect in a subsequent action in federal court seeking relief under section 1983. E.g., *Collard v. Incorporated Village of Flower Hill*, 759 F.2d 205, 207 (2d Cir.) (per curiam), cert. denied, 474 U.S. 827, 106 S.Ct. 88, 88 L.Ed.2d 72 (1985).

■ Under New York law, the "[a]pplication of the doctrine of collateral estoppel requires a finding of the identicality of an issue necessarily decided in the prior action and a full and fair opportunity to contest the issue in the prior action." *Benjamin v. Coughlin*, 905 F.2d 571, 575 (2d Cir.1990). Appellants argue that neither of these conditions is satisfied here. It is clear to us, however, that the district court properly found that appellants were collaterally estopped from pursuing their section 1983 claims, since the record shows that the state court directly decided issues that are central to appellants' section 1983 claims and that appellants had a full and fair opportunity to litigate those issues.

■ The record shows that when Judge Raggi entered the June 1989 abstention order, she clearly contemplated that appellants' conspiracy allegations—which were central to their section 1983 claims—would be decided in the pending state proceeding before Justice Greenfield when he decided

the cross-motion to quash the subpoenas. Under New York law, a subpoena will be quashed if compliance will unduly infringe upon fundamental rights such as those guaranteed by the First Amendment. See *Matter of Grand Jury Subpoenas*, 72 N.Y.2d 307, 312, 532 N.Y.S.2d 722, 528 N.E.2d 1195, cert. denied, 488 U.S. 966, 109 S.Ct. 492, 102 L.Ed.2d 529 (1988). Judge Raggi thus properly found in the abstention order that appellants "can adequately raise their constitutional challenges to the Attorney General's conduct in pending state proceedings." Indeed, Judge Raggi summarized one of the arguments that the Temple and Mackey raised in their cross-motion in the pending state court proceeding as whether "the Attorney General was engaged in a conspiracy to deprive Mackey and the Temple of constitutional rights."

The abstention order also recognized the preclusive effects that would flow from the state court's determination. Significantly, Judge Raggi stayed the federal action rather than dismissing it, because if appellants had been *successful* in the state proceeding the only relief available to them there would have been to quash the subpoenas. Thus, by staying the federal action, Judge Raggi provided appellants with the opportunity for returning to federal court to receive monetary or injunctive relief for any constitutional violations found by the state court. Cf. *Davidson v. Capuano*, 792 F.2d 275, 282 (2d Cir.1986). Conversely, the judge also recognized in the order that if appellants were not successful in the state court, then those state court findings could have preclusive effect against appellants upon their return to federal court.

In light of the district court's abstention order, appellants were on notice that issues pertaining to their constitutional claims would be determined in the state court. Moreover, appellants took advantage of this opportunity. Although appellants now contend otherwise, one of the issues they chose to raise in the state court was their constitutional challenge to the subpoenas. In an affidavit submitted in the state court in support of the cross-motion to quash the subpoenas, the Temple's attorney alleged that the Attorney General met with Newfield, Davis and Whelan and issued the "meritless subpoenas," and that the Daily News defendants published the libelous articles as part of a conspiracy to deprive the Temple and Mackey of their civil rights. The attorney then stated that "[i]t would be impossible for this Court to compel compliance with those subpoenas if it is found that the Attorney General did in fact conspire to deprive plaintiffs of their Constitutional rights."

Appellants therefore chose to place the conspiracy allegations, which were central to their section 1983 claims, directly in issue in the state court proceeding. Justice Greenfield was aware that his decision might affect appellants' claims in the federal court, since he held that the district court "has deferred to this court to determine the various issues raised by Mackey and the Temple." In light of the foregoing, Judge Spatt properly found that the state court had adversely resolved issues central to appellants' constitutional claims when it denied the cross-motion to quash the subpoenas and granted the Attorney General's motion to enforce, and that appellants had a full and fair opportunity to litigate those issues in the state court.

Appellants argue that because their entire section 1983 claim was not before the state court, the issues decided were not "identical." However, Justice Greenfield denied the cross-motion after finding that the investigation did not "unnecessarily interfer[e] with First Amendment freedoms" and did not prevent "Mackey or the Temple from practicing their religious activity, nor is it disruptive to such activity." Justice Greenfield also found that there was "no basis" for concluding that the Attorney General was acting in bad faith in pursuing the investigation of either Mackey or the Temple. These findings that the State defendants did not violate appellants' constitutional rights by issuing the subpoenas or pursuing the investigation thus bar appellants' conspiracy claim in the district court, since "[i]t is the wrongful act, not the conspiracy, which is actionable." *Singleton v. City of New York*, 632 F.2d 185, 192

(2d Cir.1980), cert. denied, 450 U.S. 920, 101 S.Ct. 1368, 67 L.Ed.2d 347 (1981); see *United States v. Sacco*, 927 F.2d 726 (2d Cir. 1991). Moreover, appellants had an opportunity to challenge those findings in the state court, but chose not to pursue an appeal. Under the circumstances, we will not consider their argument to us that the findings were based upon an inadequate record, which they were not allowed to develop.

 Appellants also argue that collateral estoppel is inapplicable here because they had a right to trial by jury in the federal court whereas the state court determination was made by a judge. The Seventh Amendment, however, does not prevent the use of collateral estoppel in this context. Cf. *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 337, 99 S.Ct. 645, 654, 58 L.Ed.2d 552 (1979). Moreover, under New York law, even though a party seeks to invoke his right to a jury trial in a subsequent civil proceeding, the party will be precluded from relitigating issues previously decided by a non-jury tribunal if that party had affirmatively sought the prior ruling. See *Stevenson v. Goomar*, 148 A.D.2d 217, 219–20 & n. 2, 544 N.Y.S.2d 690 (3d Dept.), appeal dismissed, 74 N.Y.2d 945, 550 N.Y. S.2d 278, 549 N.E.2d 480 (1989); cf. *Ryan v. New York Telephone Co.*, 62 N.Y.2d 494, 478 N.Y.S.2d 823, 467 N.E.2d 487 (1984). Since appellants raised issues central to their constitutional claims by bringing the cross-motion to quash the subpoena in the state court, we believe that their right to a jury trial on these claims in the federal court does not bar the use of collateral estoppel under New York law.

In sum, we find that the district court correctly dismissed appellants' section 1983 claims on the basis of collateral estoppel. We therefore do not reach the alternate ground of qualified immunity relied on by the district court with respect to the State defendants. With regard to appellants' remaining claims, they apparently argue only that because the district court erred in applying collateral estoppel to the section 1983 claims, it erred in dismissing the other claims. However, we agree with the district court's dismissal under Fed.R.Civ.P. 12(b)(6) of appellants' section 1985(3) claims since they were couched in terms of conclusory allegations and failed to demonstrate "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action" as required by section 1985(3). *New York State National Org. for Women v. Terry*, 886 F.2d 1339, 1358 (2d Cir.1989), cert. denied, — U.S. —, 110 S.Ct. 2206, 109 L.Ed.2d 532 (1990). Given the absence of federal claims left to adjudicate, the district court properly dismissed the pendent state-law claims. See *Federman v. Empire Fire & Marine Ins. Co.*, 597 F.2d 798, 809 (2d Cir.1979).

The judgment of the district court is affirmed.