**BUNCE, Appellant,**

v.

**PARKSIDE LODGE OF COLUMBUS et al., Appellees.**

[Cite as *Bunce v. Parkside Lodge of Columbus* (1991), 73 Ohio App.3d 253.]

Court of Appeals of Ohio,
Franklin County.

No. 90AP–1106.

Decided April 23, 1991.

254

*Steven E. Hillman,* for appellant.

*Baker & Hostetler,* and *Mary M. Bittence,* for appellee Parkside Lodge.

*Cassidy & Meeks,* and *Samuel H. Shamansky,* for appellee Byron Brown.

BOWMAN, Presiding Judge.

In January 1989, appellant, Kimberly Bunce, checked into Parkside Lodge of Ohio, Inc., a drug and alcohol rehabilitation facility, for treatment of a cocaine addiction. Under the program, Bunce would live at the facility for thirty days and then would participate in an outpatient treatment regime. Appellee, Byron Brown, was employed by appellee, Parkside, as a senior

counselor with supervisory authority over other members of the counseling staff.

During her stay at Parkside, Bunce had an argument with another patient and decided to leave. Brown went to her room and was able to persuade her to stay. Bunce alleges that, while she and Brown were alone in her room, Brown hugged her and fondled her breast. A few days later, they met again in Brown's office and Bunce claims Brown again hugged her and they engaged in sexual intercourse. Several other sexual encounters allegedly occurred, both in Brown's office and in the office of Parkside's treatment director.

Bunce eventually revealed her sexual relationship with Brown to two other Parkside counselors and severed her connection to both Brown and the facility. Brown resigned from Parkside shortly thereafter. Bunce subsequently filed an action against both Parkside and Brown in the Franklin County Court of Common Pleas alleging sexual assault, misuse of a counselor/patient relationship, malpractice, negligence, and intentional infliction of emotional distress.

The trial court granted Parkside's motion for summary judgment on the ground that as a matter of law Parkside could not be liable for the intentional acts of its employee, Brown. The matter proceeded to a jury trial on the allegations against Brown. However, the trial court directed a verdict in Brown's favor at the close of Bunce's case.

Bunce appeals from both the summary judgment and directed verdict granted in the trial court, assigning the following as error:

"Assignment of Error I

"The trial court erred in granting the defendant Parkside a summary judgment in that there were disputed material questions of fact for the trier of fact to decide.

"Assignment of Error II

"The trial court erred by granting the appellee Brown a directed verdict at the close of appellant's case."

Bunce's first assignment of error asserts that a genuine issue of material fact existed as to the liability of Parkside for the actions of Brown and, thus, the trial court erred in granting Parkside's summary judgment motion. According to Bunce, the sexual activity initiated by Brown arose out of and was facilitated by Brown's employment with Parkside.

The trial court, by judgment entry, determined that any actions by Brown were outside the scope of his employment, so that as a matter of law Parkside could not be held liable. We agree.

Summary judgment is proper only where the trial court, construing the facts in a light most favorable to the nonmovant, determines that no genuine issue of material fact exists and the nonmovant is entitled to judgment as a matter of law. *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 66, 8 O.O.3d 73, 74, 375 N.E.2d 46, 47. If the facts do not suggest a dispute, " * * * the question of whether an employee was acting within the scope of his employment is not one of fact, but is one of law for the court. * * * " *Knecht v. Vandalia Medical Center, Inc.* (1984), 14 Ohio App.3d 129, 132, 14 OBR 145, 147, 470 N.E.2d 230, 233.

■ To support her claim that Parkside was liable under the doctrine of *respondeat superior,* Bunce needed to demonstrate that Brown's conduct was within the scope of his employment. See *Byrd v. Faber* (1991), 57 Ohio St.3d 56, 58, 565 N.E.2d 584, 587. An employer is not liable for " * * * independent self-serving acts of his employees which in no way facilitate or promote his business." *Id.* at 59, 565 N.E.2d at 588.

■ The instant facts do not establish that sexual contact between Brown and Bunce was in the scope of Brown's employment. Parkside neither recommended nor condoned such a counselor/patient relationship. Instead, this was a situation " * * * in which the employee acted from intensely personal motives, be they malice, lust or rage * * * " and in which Brown was " * * * indisputably outside his appointed tasks * * *." *Taylor v. Doctors Hosp.* (1985), 21 Ohio App.3d 154, 156, 21 OBR 165, 167, 486 N.E.2d 1249, 1251.

Bunce directs our attention to several extra-jurisdictional decisions which arguably support her contention that the question of Parkside's vicarious liability must survive summary judgment. Finding the holdings of these cases to be contrary to Ohio law as promulgated in *Byrd, supra,* we reject their persuasive value.

Bunce cites *Shrout v. Black Clawson Co.* (S.D.Ohio 1988), 689 F.Supp. 774, 781, for its view that, because the plaintiff-employee was sexually harassed during working hours at the worksite by a person with supervisory authority over the terms of her employment, the supervisor's conduct was within the scope of his employment and the employer could be vicariously liable. We distinguish *Shrout* on the basis that *Shrout* involved a *quid pro quo* sexual harassment claim, an element of which is that the employee's submission to the sexual conduct must be an express or implied condition for receiving job benefits. *Id.* at 780. Inherent in this type of suit is the notion that the very power of the supervisor to coerce his subordinate derives from the cloak of authority placed upon him by the employer. *Id.* at 781, citing *Meritor Sav.*

*Bank, FSB v. Vinson* (1986), 477 U.S. 57, 76–77, 106 S.Ct. 2399, 2410, 91 L.Ed.2d 49, 65–66.

This type of relationship is simply not present under the instant facts, since it was Brown's counselor role, and not his employment with Parkside, which would have enabled him to initiate an intimate relationship with Bunce. The type of control over Bunce's conduct held by a counselor is vastly different from the authority held by a supervisor in an employment situation. We therefore reject *Shrout* as a basis for finding that Parkside may have been liable under a *respondeat superior* theory.

Two other cases identified by Bunce are factually similar to the instant facts, yet embrace a rule of law not adopted in Ohio.

*Marston v. Minneapolis Clinic of Psychiatry and Neurology, Ltd.* (Minn. 1982), 329 N.W.2d 306, addressed whether the employer of a psychologist who had seduced two female patients could be vicariously liable for the psychologist's acts. Following a previous decision which had rejected examination of the employee's motive as crucial to the *respondeat superior* question, the Minnesota Supreme Court held in *Marston* that the proper test was whether the employee was " * * * doing anything which is reasonably incidental to his employment * * * " and which conduct occurred " * * * within work-related limits of time and place. * * *" *Id.* at 311, fn. 3. In addition:

" * * * ' * * * The test is not necessarily whether the specific conduct was expressly authorized or forbidden by the principal but rather whether such conduct should fairly have been foreseen from the nature of the employment and the duties relating to it.' " *Id.*

In so holding, the *Marston* court refused to impose liability on the employer based upon the "arbitrary determination" of at what point the employer's acts transgress from being in furtherance of the employer's business to being in promotion of his own intentions. *Id.* at 311.

Similarly, Bunce's cited case of *Stropes v. Heritage House Childrens Ctr.* (Ind.1989), 547 N.E.2d 244, in which the plaintiff sought to attach vicarious liability to a mental health care facility for the sexual molestation of a patient by a nurse's aide, held that " * * * an employee's wrongful act may still fall within the scope of his employment if his purpose was, to an appreciable extent, to further his employer's business, *even if the act was predominately motivated by an intention to benefit the employee himself.* * * * " (Emphasis added.) *Id.* at 247.

The philosophy of both *Marston* and *Stropes* rests upon a hesitancy to conduct what the courts consider to be a post hoc inquiry into the psyche of the employee in an effort to define the precise moment when an employee's

action departs from the scope of his employment. As evidenced by *Byrd, supra,* the Ohio Supreme Court has not adopted the view that motive is irrelevant to such cases, and neither may we.

Nor do we see any difficulty in examination of the employee's motive in situations such as the case at bar, since the moment when a counselor's conduct progresses from a friendly gesture to prohibited sexual touching is capable of clear definition. Even clearer is the concept that sexual contact occurring in an orthodox counseling program would be completely unrelated to the business of the employer. We thus decline Bunce's invitation to follow the Minnesota and Indiana Supreme Courts on this issue.

Because we find that the trial court properly concluded that Brown acted outside the scope of his employment, the court did not err in granting Parkside's summary judgment motion. Bunce's first assignment of error is overruled.

Bunce's second assignment of error charges that the trial court erred in granting Brown's directed verdict motion at the close of Bunce's case. The court apparently based the directed verdict upon its belief that Bunce's evidence failed to support her sexual assault claim.

Civ.R. 50(A)(4) provides:

"When granted on the evidence. When a motion for a directed verdict has been properly made, and the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party, the court shall sustain the motion and direct a verdict for the moving party as to that issue."

■ In considering a motion for directed verdict, the trial court may only " * * * determine whether there is any evidence of substantial probative value in support of the non-moving party's claim. * * * " *Eldridge v. Firestone Tire & Rubber Co.* (1985), 24 Ohio App.3d 94, 96, 24 OBR 164, 166, 493 N.E.2d 293, 295. Such analysis focuses upon the sufficiency of the evidence, rather than upon its weight or credibility. *Ruta v. Breckenridge–Remy Co.* (1982), 69 Ohio St.2d 66, 67–68, 23 O.O.3d 115, 115–116, 430 N.E.2d 935, 936–937. Application of the rule to the facts herein presents two issues for our review:

(1) Whether the trial court properly concluded that Bunce's sexual assault claim was unsupported by the evidence, thus justifying a directed verdict as to that issue; and

(2) Whether the trial court properly concluded that the sexual assault claim was determinative as to her entire case, so that a directed verdict on that issue was conclusive of the action as a whole.

Bunce asserts that she presented sufficient evidence to raise a genuine issue as to whether a sexual assault had occurred. For her civil claim, Bunce relied upon a criminal statute outlining the elements of the crime of sexual battery. R.C. 2907.03 provides, in part:

"(A) No person shall engage in sexual conduct with another, not the spouse of the offender, when any of the following apply:

" * * *

"(2) The offender knows that the other person's ability to appraise the nature of or control his or her own conduct is substantially impaired.

" * * *

"(6) The other person is in custody of law or a patient in a hospital or other institution, and the offender has supervisory or disciplinary authority over such other person."

Although Bunce's argument on this point is somewhat sketchy, she appears to assert that Brown was negligent *per se* because he violated R.C. 2907.03 in engaging in sexual intercourse with her.

The trial court determined that, because Bunce admitted that she had consented to intercourse with Brown, any sexual contact was consensual and, therefore, the jury could only conclude that no assault had taken place. The trial court did not address Bunce's allegations of malpractice. Bunce asserts that the evidence showed that she had a diminished capacity to make intelligent decisions due to both her addiction and the nature of her relationship with Brown. She therefore argues that it was a question of fact for the jury whether her consent to sexual intercourse was valid.

We agree with Bunce that the trial court improperly found that her admission of consent was determinative of her sexual assault claim against Brown. First, Bunce raised a question of fact as to whether she met the definition of a patient in an institution, with Brown having care over her, as required under R.C. 2907.03(A)(6). Clearly, at the time of the sexual acts alleged herein, Brown was in a position of control over Bunce's treatment and daily activities. Bunce in turn was obliged to rely upon his authority and, the evidence indicates, placed her trust in him.

Second, Bunce adequately raised an issue as to whether her ability to control her own conduct was diminished and whether Brown was aware of the impairment, as required by R.C. 2907.03(A)(2). Evidence presented by Bunce sufficiently alleged that, as a drug addict seeking treatment and possibly

coping with withdrawal symptoms or emotional instability, her ability to control her conduct may have been impaired. Bunce's evidence also indicated that, as an experienced counselor of chemically dependent patients, Brown could be expected to recognize his patients' vulnerability.

Because of the relationship of the two parties, the issue of whether sexual contact was consensual was no longer a simple question of whether Bunce admitted to having allowed the contact, but a genuine issue of fact as to whether her consent was the result of independent volition. We therefore find that the trial court erred in directing the verdict on the question of whether a sexual assault occurred.

We also find that the trial court improperly concluded that the sexual assault claim was determinative of the entire action.

Although Bunce's complaint alleged several additional causes of action, the gist of these claims is that Brown committed malpractice in violating a legal duty he owed Bunce as a patient of the treatment facility.

 Maintenance of a malpractice claim does not rely upon the question of whether Bunce validly consented to the sexual contact but upon the possible breach of a duty owed her by Brown. It is axiomatic that, although consent would be a valid defense to a criminal charge of sexual assault or rape, consent is not a defense to a malpractice claim based upon sexual contact. Malpractice involves the breach of a professional duty; where the duty itself is to refrain from sexual contact, consent would not excuse the breach. The action for malpractice arises out of a " * * * public policy to protect a patient from the deliberate and malicious abuse of power and breach of trust by a [therapist] when that patient entrusts to him her body and mind in the hope that he will use his best efforts to effect a cure. * * * " *Roy v. Hartogs* (1975), 81 Misc.2d 350, 354, 366 N.Y.S.2d 297, 301, reversed on other grounds (1976), 85 Misc.2d 891, 381 N.Y.S.2d 587 (addressing sexual contact between a psychiatrist and his patient).

In *Strock v. Pressnell* (1988), 38 Ohio St.3d 207, 211, 527 N.E.2d 1235, 1239 the Ohio Supreme Court defined "malpractice" as:

" * * * [P]rofessional misconduct, *i.e.*, the failure of one rendering services in the practice of a profession to exercise that degree of skill and learning normally applied by members of that profession in similar circumstances. See 2 Restatement of the Law 2d, Torts (1965), Section 299A."

Our review of the record indicates that Bunce presented sufficient evidence to support the elements of a malpractice action, thus allowing reasonable minds to reach different conclusions and making it error to grant a motion for a directed verdict.

Clearly, a therapist/patient relationship existed between Brown and Bunce, even though Brown was not Bunce's primary counselor. Brown played an authoritative role and was in a better position than Bunce to prescribe limits to their relationship.

Moreover, Bunce presented evidence as to the professional duty Brown owed her to refrain from sexual contact. Testimony by Philip Lopresti, treatment director at Parkside, indicated that Brown was subject to a state standard of conduct which forbade sexual intimacy between counselors and patients.

Bunce additionally presented evidence raising an issue of fact as to whether a sexual relationship had existed. In addition to her testimony as to the existence of a physical relationship, she produced evidence which, if believed, indicated that she had purchased a gift certificate for Brown from a local retail store, that Brown had visited her at her place of employment, and that Brown had called her at home.

Finally, Bunce presented some evidence of injury she claims to have suffered as a result of the alleged sexual relationship. She testified she was confused and angry when Brown's interest in her faded, and that she was ultimately forced to leave Parkside and seek an alternative source of treatment for her addiction. In addition, David M. Lowenstein, the psychologist she visited after leaving Parkside, testified that, while his original idea in treating Bunce was to help her with her chemical dependency problem, the focus of their sessions was ultimately Bunce's emotional response to her defunct relationship with Brown.

Although we are aware of no Ohio cases on point, other jurisdictions have recognized a related cause of action for malpractice where a counselor or other mental health professional engages in sexual conduct with a patient:

"Sexual exploitation of a patient during or even after a course of treatment, the harmful effects of which are by now well recognized and unanimously condemned within the health professions, is a clear violation of the duty of care the physician owes a patient and, thus, constitutes malpractice even if the sexual conduct was not itself done under the guise of treatment (*Noto v. St. Vincent's Hosp. & Med. Center*, 142 Misc.2d 292, 296 [537 N.Y.S.2d 446, 448–449]; *Hoopes v. Hammargren*, 102 Nev. 425, 725 P.2d 238; *Wall v. Noble*, 705 S.W.2d 727 [Tex.App.]; Adams, *Sex with Patients: Is it Malpractice?*, 23 Trial 58 [June 1987]; *see also, Greenberg v. McCabe*, 453 F.Supp. 765, *affd.* [3 Cir.] 594 F.2d 854, *cert. denied* 444 U.S. 840 [100 S.Ct. 78, 79, 62 L.Ed.2d 51] * * *)." *Stevenson v. Goomar* (1989), 148 A.D.2d 217, 226, 544 N.Y.S.2d 690, 696, Levine, J., dissenting. See, also, Annotation, Civil Liability of Doctor or Psychologist for Having Sexual Relationship with Patient (1970), 33 A.L.R.3d

1393. See, also, Moisan, Sins of the Secular Priesthood: Civil Liability for the Sexual Seduction of Patients (1987), 33 Med. Trial Tech. Q. 440, 448.

Because we find that Bunce's evidence raised a genuine issue of fact as to whether Brown had breached a duty to Bunce and whether the breach caused her injury, we find the trial court erred in granting Brown's motion for directed verdict. We therefore sustain Bunce's second assignment of error.

For the foregoing reasons, appellant's first assignment of error is overruled and appellant's second assignment of error is sustained. The judgment of the trial court is affirmed in part, reversed in part and cause remanded.

> *Judgment affirmed in part,*
> *reversed in part*
> *and cause remanded.*

JOHN C. YOUNG and HARSHA, JJ., concur.

HARSHA, J., of the Fourth Appellate District, sitting by assignment.