*320
 
 OPINION OF THE COURT
 

 Bellacosa, J.
 

 Plaintiff David sued her former dentist Biondo in March 1986 for dental malpractice. The instant civil case and appeal originate in alleged damage ensuing from the removal of orthodontic braces in 1985.
 

 David had also filed a grievance with the Office of Professional Discipline (O.P.D.) of the New York State Education Department which, after investigation, preferred disciplinary charges against the dentist in early 1988. O.P.D. prosecuted the allegations during the next several years. A comprehensive hearing and fact finding led, in 1991, to the State Board of Regents dismissing all specifications of professional misconduct.
 

 This appeal involves only the civil action for damages that has continued on its own track over the past 12 years. Supreme Court dismissed this case in 1995 solely on grounds of collateral estoppel, based on the 1991 Board of Regents’ resolution of the disciplinary phase of this imbroglio. The Appellate Division, in 1997, affirmed Supreme Court’s dismissal, and this Court granted leave to appeal to David. We now reverse and reinstate David’s malpractice complaint.
 

 The collateral estoppel issue is the only focus and fulcrum of this appeal. The disposition centers on whether plaintiff David can be legally deemed to be in privity with the disciplinary prosecutor, O.P.D. To equate these two parties and so hold, this Court would have to be satisfied that David had a full and fair opportunity to litigate her civil claims against Biondo within the juridical and practical confines of the disciplinary proceeding.
 

 
 *321
 
 Our holding is that David may not be turned out of court, as a matter of law, on collateral estoppel grounds, predicated on the Board of Regents’ dismissal of the professional disciplinary proceedings against Biondo. The firm foundation for this conclusion rests on several considerations. First, David was not the legally recognized party in interest in the disciplinary proceeding; rather, the State, as the representative of the public interest, was the party in interest. Second, the remedy flowing from that proceeding would have been professional discipline, but for the Regents’ outright dismissal; in contrast, David’s civil action seeks traditional money damages. Next, O.P.D. is statutorily invested with exclusive control and responsibility for the prosecution of the professional disciplinary proceeding; distinguishably, David, despite her role in instigating the disciplinary investigation, enjoyed no legal or practical opportunity to litigate her civil law grievances within the framework of the O.P.D. proceeding.
 

 O.P.D. is statutorily charged with investigating each complaint of professional misconduct brought to it. It is vested with discretion, however, to determine whether further disciplinary action should be undertaken, or whether a matter should be closed (Education Law § 6510 [1] [b]). Here, after initial investigation of David’s complaint, O.P.D. preferred six specifications of professional misconduct, including the charge of negligent practice of dentistry.
 

 The dentist was given a hearing date "(Education Law § 6510 [1] [d]). A six-day hearing was held before a five-member hearing panel of the State Board of Dentistry, comprised of four dentists and a public representative (Education Law § 6510 [3] [b]). Counsel for O.P.D. presented all the evidence (Education Law § 6510 [3] [c]). Biondo, who was represented by his own counsel, testified and was cross-examined only by O.P.D. counsel. David, also represented by her own counsel, testified at the hearing solely as an O.P.D. witness and was also cross-examined. Notably, at all other times David was not present, nor was her counsel permitted to examine witnesses or given any other representational or participatory role.
 

 The hearing panel issued its report to the Regents Review Committee (Education Law § 6510 [4]). The dentist appeared and was represented by counsel before the Regents Review Committee (Education Law § 6510 [4] [b]). The statute makes no provision for the appearance of a complainant at this stage of disciplinary proceedings. The Regents Review Committee adopted the hearing panel’s determination, which concluded
 
 *322
 
 that, “the charges contained in the first through sixth specifications have not been proven by a preponderance of the evidence”.
 

 The Regents Review Committee passed its written report up to the Board of Regents and recommended that the factual findings be accepted (Education Law § 6510 [4] [b]). The Regents, vested with exclusive discretion and final authority to determine the disciplinary matter, accepted the recommendations of both the hearing panel and its own Review Committee. It determined to dismiss all disciplinary charges.
 

 Considering the legal and functional entirety of the disciplinary process, we are persuaded that an averred victim of professional misconduct should not be deemed in legal privity with a professional regulatory body, under circumstances such as are presented here. Pertinently, this Court ruled on an analogous privity question, for purposes of. collateral estoppel availability, in
 
 Matter of Juan C. v Cortines
 
 (89 NY2d 659 [1997]), shortly after the Appellate Division issued its decision in the instant matter.
 

 As set forth in
 
 Matter of Juan C.,
 
 the doctrine of collateral estoppel rests on the interest of reducing needless litigation and conserving the resources of courts and litigants. Part of the doctrine’s justification is the unfairness and inefficiency of otherwise permitting a party to relitigate an issue which has previously been decided against that person, or a party in privity with that person, in a proceeding in which the person had a full and fair opportunity to litigate the point again in question
 
 (see, id.,
 
 at 667). The party seeking the benefit of collateral estoppel must demonstrate that the identical issue was necessarily decided in the prior adjudication and is decisive in the newly presented circumstance and forum. To block the use of estoppel, a contestant can show the absence of a full and fair opportunity to present relevant views in the prior contest
 
 (see, id.).
 

 David has conceded the identity of issues involved in the disciplinary proceeding with the instant civil litigation. Thus, the determinative question shifts to whether she had a full and fair opportunity to litigate her personal claim in the proceeding before the O.P.D. and Board of Regents. The examination of her functional opportunity to have previously litigated her concerns thus largely hinges on the question of whether she and her personal interests may somehow be equated with those of the O.P.D.
 
 (see, id.; see also, D’Arata v New York Cent. Mut. Fire Ins. Co.,
 
 76 NY2d 659).
 

 
 *323
 
 The defendant would morph the fundamentally distinct interests of David and O.P.D. into a privity relationship
 
 (compare, Matter of Juan C. v Cortines, supra).
 
 The statutory structure that establishes O.P.D.’s investigatory and prosecutorial functions demonstrates that, for many of the same reasons set forth in
 
 Matter of Juan C.,
 
 privity of the parties is utterly lacking in this case.
 

 At the outset, O.P.D. is the presentment agency here
 
 (see,
 
 Education Law § 6510). Its unique role is a built-in assurance of reasonable .objectivity that provides some protection for professionals from potentially overzealous personal pursuits (compare the roles of District Attorneys, defendants and complainants in criminal proceedings). In this case, while David prompted an O.P.D. investigation with her initial grievance, O.P.D. acted alone, with its independent discretion, to prefer and prosecute charges of professional misconduct
 
 (see,
 
 Education Law § 6510 [1] [b], [c]; [3] [c]).
 

 Additionally, David was allowed no role in the subsequent and dispositional levels of the disciplinary procedure, nor would she qualify to seek a judicial or appellate review of the final determination in that regard
 
 (see,
 
 Education Law § 6510 [5]). The statutory scheme simply does not provide for David’s input beyond the initial hearing, where she could participate only at O.P.D.’s discretion in a limited fashion.
 

 Defendant-respondent Biondo’s argument on this appeal proposes that appellant David qualified as the “real party in interest” in the disciplinary matter. That legal proposition is not sustainable. The “real party” hypothesis falls apart in the face of the “practical realities” that inhere in the respective and distinct forums
 
 (see, Gilberg v Barbieri,
 
 53 NY2d 285, 292). This matter distills to the question, as in
 
 Juan C. (supra),
 
 of whether David was able to sufficiently participate in or meaningfully control the disciplinary proceeding. Manifestly, she was not. Lack of participation and control are a fortiori verities in this case, which involves an individual and a regulatory body, compared to
 
 Matter of Juan C.,
 
 which did not apply collateral estoppel to dual functions of the
 
 same
 
 public entity— the New York City Corporation Counsel.
 

 We observe also that the “control/participation” standard remains a useful and key factor in assaying the relationship between parties, for privity purposes
 
 (see, Watts v Swiss Bank Corp.,
 
 27 NY2d 270, quoted favorably in
 
 Matter of Juan C. v Cortines, supra,
 
 at 667-668;
 
 see generally,
 
 Restatement
 
 *324
 
 [Second] of Judgments § 39). Thus, courts should continue to consider the character, right and extent of a party’s role in one proceeding as it bears on the intervention of the collateral estoppel doctrine in another. The effect of the permitted activity on the party’s interests is key in relationship to the totality of the circumstances and discrete facts at issue in each forum, including a party’s access to personal counsel and direct representation
 
 (see, Watts v Swiss Bank Corp., supra; see also,
 
 Restatement [Second] of Judgments § 39, Reporter’s Note, comment c).
 

 In the instant case, therefore, though Dávid prompted O.P.D.’s investigation, the public body did not serve as her personal counsel in the disciplinary proceeding. She was represented by her own lawyer but only in her capacity as a witness on behalf of O.P.D. Even though David assisted O.P.D. through her zealous pursuit of the initial grievance and testimony, mere facilitation of this kind is not enough to demonstrate control
 
 (see,
 
 Restatement [Second] of Judgments § 39, Reporter’s Note, comment c). Simply put, the disciplinary matter was not David’s case in any legal or functional sense.
 

 Moreover, policy considerations must be factored in to calculate the “jurisprudential price” that might cost David access for resolution of her case in the civil courts of the State
 
 (Matter of Juan C. v Cortines, supra,
 
 at 670). Here, the nature of David’s interest is purely individual and pecuniary. Indeed, she is under no initial or continuing obligation to the public to report her alleged plight to O.P.D., and when she does, O.P.D. is not an advocate for her pecuniary interest. Thus, David’s individual objective for damages was never at issue, considered or resolved by O.P.D.
 

 At best, her personal concerns started from a common source — dental malpractice. That merely served as the instrument for launching and pursuing O.P.D.’s public regulatory goals and responsibility. For this Court to hold that David’s personal interests are so intertwined in the public disciplinary matter that she forfeits judicial resolution of her private claim might deter civic reports of misconduct to O.P.D. — a practical repercussion unacceptably at odds with the greater public interest in having the professions particularly scrutinized and regulated. O.P.D. supervises 35 professions under a careful statutory regimen. Maintenance of an effective independent regulatory system, coordinately with access to judicial forums for adjudication of aggrieved individuals’ personal damage claims, presents another compelling policy feature against al
 
 *325
 
 lowing the interposition of the collateral estoppel doctrine in this situation.
 

 In sum and substance, collateral estoppel is not a tool to benefit or punish particular litigants. The judicial responsibility, rather, is to see to it that substantive and procedural safeguards are applied evenhandedly for the protection of all persons who turn to the court system, even, and perhaps especially, under the constraint of difficult fact patterns.
 

 Accordingly, the order of the Appellate Division should be reversed, with costs, the defendant’s motion for summary judgment solely on collateral estoppel grounds denied, the complaint reinstated and the matter remitted to Supreme Court for further proceedings.
 

 Chief Judge Kaye and Judges Smith, Levine, Ciparick and Wesley concur.
 

 Order reversed, with costs, and defendant’s motion for summary judgment denied.