[749 NYS2d 505]

CHRISTINE A. JEFFREYS, Appellant, v PATRICK H. GRIFFIN, Respondent.

First Department, October 31, 2002

APPEARANCES OF COUNSEL

*Barry S. Gedan* for appellant.

*Denise Buda* of counsel (*Michael S. Kelton* on the brief; *Lippman Krasnow & Kelton LLP,* attorneys), for respondent.

## OPINION OF THE COURT

Tom, J.

The issue before us is whether the factual determination of the Hearing Committee of the New York State Department of Health's Board for Professional Medical Conduct (the Medical Board), which revoked defendant doctor's license to practice medicine, collaterally estopped defendant from litigating the issue of liability with respect to plaintiff's civil cause of action for assault and battery. Under the particular circumstances of this case, I conclude that the defendant is entitled to a trial.

Defendant was a gastroenterologist who had treated plaintiff, his patient, for the stomach disorders gastritis and hyperacidity, and depression for several years. Between 1992 and 1994, plaintiff visited defendant at his medical office two or three times annually, during which time she complained that difficulties with her landlord, and her eventual eviction, caused her stress. On at least one occasion, in 1994, he recommended that she seek psychiatric help which, however, she declined to do. Plaintiff claimed that during a scheduled January 1995 endoscopy and upper colonoscopy, defendant orally sodomized her while she was under sedation. On the basis of her claim, defendant was indicted and convicted of sodomy in the first degree and falsifying business records. Defendant's conviction eventually was overturned by this Court on April 2, 1998 upon the ground that prosecutorial misconduct had deprived the defendant of a fair trial (242 AD2d 70, *appeal dismissed* 93 NY2d 955). As a consequence of that reversal, trial evidence and conclusions based thereon derived from the first criminal trial, whether compelling or not, to which the dissent alludes, would not properly be a basis for our current analysis. The crucial point is that notwithstanding the charges made and evidence proffered on retrial, defendant was acquitted of all criminal charges.

After his conviction and prior to our reversal, defendant was subjected to a disciplinary proceeding before the Medical Board. As a consequence of that proceeding, defendant's license to practice medicine was revoked by an order and determination dated October 24, 1996. The Hearing Committee, in addition to

the sexual misconduct claims, had also considered charges relating to the preparation of false chart entries and other record keeping errors. Present plaintiff appeared as a witness at the hearing. Although all three members of the Hearing Committee found an adequate basis for revocation of defendant's medical license, only two found against defendant, with one finding for defendant, on the claim of sexual impropriety. The factfinding, by the Committee, alluded to at least the possibility that plaintiff had psychiatric problems, and some pharmacological evidence was introduced that medication may have affected her ability to recall the immediate aftermath of the medical procedure.

Plaintiff commenced the present civil action for damages allegedly arising from assault and battery and intentional infliction of emotional distress. By order dated April 2, 1997, Supreme Court granted plaintiff summary judgment on the issue of liability, based on defendant's conviction, as to the first cause of action sounding in assault and battery, but directed that trial be conducted on a related emotional distress claim insofar as the conviction was not dispositive regarding the requisite intent. The court noted that the parties had not yet been deposed. Hence, whether or not cross-examination was conducted at the criminal trial or even in the administrative hearing is not relevant to the question of whether there was adequate discovery in the present proceeding. There is a distinct difference in the latitude permitted for cross-examination of a witness and discovery. Cross-examination of a witness by a party is restricted only to the scope of testimony adduced during the direct examination of the witness. On the other hand, discovery is open-ended and provides for full disclosure of all evidence material and necessary in the prosecution or defense of an action. Therefore, cross-examination in a different proceeding should not be seen as filling the gap of discovery in the present proceeding, especially when the goals, procedures and burdens of proof differ for the respective proceedings.

After our reversal of the criminal judgment, the motion court, by decision and order dated December 10, 1998, vacated its prior order granting plaintiff summary judgment on her assault and battery claim. The motion court found that reversal of the criminal conviction basically eliminated applicability of collateral estoppel to bar litigation of the assault and battery claim in the civil action. The court, citing to *David v Biondo* (92 NY2d 318), was concerned that present plaintiff had not

been the party in privity with the disciplinary board prosecutor, that the Committee on Professional Conduct was the actual party in interest, that the administrative remedy of revocation of the professional license was different from the monetary remedies sought by plaintiff in the civil action, and, insofar as the administrative proceeding and determination thus spoke to different issues, it could not be used as dispositive proof in the present civil action. Subsequently, defendant was retried on the criminal charge and was acquitted, as noted.

Plaintiff appeals from the order vacating the prior order which had granted her summary judgment, as to liability, on the first cause of action for assault and battery. On appeal, plaintiff argues that the factual determinations of the Medical Board to revoke defendant's medical license should be given preclusive collateral estoppel effect with respect to this cause of action.

I agree with the Supreme Court. However, I also conclude that we should not analyze this as just a case involving the application of an administrative determination to a related civil action. Rather, this case turns on the unique needs of professional disciplinary bodies, a factor articulated by Judge Bellacosa in *David* (*supra*), and the essential distinction between such a forum and a judicial forum, notwithstanding the possible relatedness of some of the claims. Moreover, I see it as a matter of elemental fairness that defendant be given the opportunity to present his case to a jury, a point articulated in the Third Department's decision in *Stevenson v Goomar* (148 AD2d 217, *lv dismissed* 74 NY2d 945). In that case, a plaintiff-patient sought to invoke collateral estoppel based on a determination by the New York State Board for Professional Medical Conduct that the defendant had engaged in misconduct, as a device for summary judgment in the civil action. The Third Department unequivocally held that "where * * * a party to a civil action seeks to invoke his right to a jury trial and he has not initiated or otherwise affirmatively sought to litigate the matter at the administrative level, fundamental fairness and the policy considerations referred to by the Court of Appeals in *Staatsburg Water Co. v. Staatsburg Fire Dist.* (72 NY2d 147, 153, *supra*) * * * require that preclusive effect not be given to the administrative determination. To conclude otherwise would result in the substantial erosion of rights far more fundamental and important than the concepts of finality and judicial economy served by the doctrine of collateral estoppel" (*Stevenson, supra* at 221).

The different natures of the proceedings also must be taken into account in discerning whether the defendant-physician has had a full and fair opportunity to litigate the claims asserted against him by a patient. Hence, in *Stevenson* (*supra*), the Third Department advanced the proposition that the New York State Board for Professional Medical Conduct, and judicial trials, are fundamentally different proceedings with differential impacts on the physician-defendant's ability to defend, necessarily restricting the availability of collateral estoppel as between the proceedings. Although there are basic procedural safeguards in any administrative proceeding, "such as the right to present evidence and cross-examine witnesses * * * there [is] no disclosure other than notice of the charges, and the rules of evidence [are] inapplicable" (*id.* at 220 [citation omitted]). The application of collateral estoppel in the present case would, in effect, foreclose defendant from conducting disclosure proceedings relevant to his defense of liability to plaintiff's charges.

As the Court of Appeals in *David* (*supra* at 325) stated, "In sum * * * collateral estoppel is not a tool to benefit or punish particular litigants. The judicial responsibility, rather, is to see to it that substantive and procedural safeguards are applied evenhandedly for the protection of all persons who turn to the court system * * *." Applying this perspective, the Third Department noted that, "[o]f equal significance is the scope of review available in the two settings. On appeal from a * * * trial, the Appellate Division has the broad power to review the facts and grant the judgment which upon the evidence should have been granted by the trial court * * *. The Appellate Division's scope of review of an administrative agency's quasi-judicial determination is, in contrast, very limited" (*Stevenson*, *supra* at 220 [citations omitted]). That Court also found significance in the fact that the medical defendant in that case, as in the present case, did not choose to litigate the matter at the administrative level; the defendant's participation "was prompted solely by his need to protect and defend his license to practice medicine. A ruling in favor of plaintiff [on the collateral estoppel issue] would effectively make the administrative agency in a disciplinary proceeding the ultimate fact finder, with only limited judicial review, in any tort action arising out of the alleged misconduct, thereby depriving a defendant of a number of valuable rights traditionally associated with civil actions, including the constitutional right to a trial by jury. Plaintiff's use of collateral estoppel offensively to establish li-

ability * * * would not comport with the underlying fundamental fairness aspects of the doctrine" (*id.* at 221). Again, we must bear in mind that "the fundamental inquiry is whether relitigation should be permitted in a particular case in light of what are often competing policy considerations, including fairness to the parties * * * and the societal interests in consistent and accurate results" (*Staatsburg, supra* at 153). As has been noted, although the goal of collateral estoppel is conservation of resources (*Matter of Juan C. v Cortines*, 89 NY2d 659, 667), the essential prerequisite is fairness, so that it "should not be rigidly or mechanically applied" (*D'Arata v New York Cent. Mut. Fire Ins. Co.*, 76 NY2d 659, 664).

The unusual procedural history of this case and the interplay of the different proceedings and results militate against the grant of estoppel. As noted, the Medical Board's finding that defendant had engaged in sexual contact with his patient in violation of professional ethics was not unanimous but rather was based on a 2-1 split vote. A question is raised as to whether defendant's conviction of the criminal charges may have affected the Board's vote as it had clearly motivated the court's original order awarding plaintiff summary judgment. The hearing before the Medical Board began on April 24, 1996, with both plaintiff and defendant testifying shortly thereafter. The administrative order was not issued until October 24, 1996. The criminal judgment by which defendant was convicted was rendered on or about September 6, 1996, months after the commencement of the hearing, but only shortly before the issuance of the administrative order. The Medical Board had notice of defendant's conviction since it appears conspicuously in the Board's findings of fact. This leads one to wonder whether a disciplinary matter that had lingered unaccountably for months and then suddenly resulted in the license revocation may have been prompted by defendant's criminal conviction. As the dissent points out, those two voting Medical Board members stated that their conclusions were not affected by the recent conviction. But that, of course, begs the question: what else were they going to say? It bears repeating that while not dispositive, defendant was, in fact, acquitted upon retrial of his criminal charges.

The dissent addresses some of the procedural aspects of physician disciplinary proceedings and concludes that the statutory requirements confer adequate fairness on those determinations. I do not dispute that such a hearing is accorded procedural due process, but I remain unconvinced that

those procedural protections are the functional equivalent of the protections to which a defendant is entitled in a civil trial, also taking into account the limited appellate review of an administrative determination. Those statutory references also do not alleviate my concern that the administrative determination was made in the aftermath of a criminal conviction which was later overturned.

A necessary prerequisite to issue preclusion is that the identical issue has already been fully litigated in the prior action and must be dispositive of the present action; the party seeking the benefit of collateral estoppel bears the burden of demonstrating such an identity of issues (*Juan C.*, *supra* at 667, quoting *Kaufman v Eli Lilly & Co.*, 65 NY2d 449, 456).

In the present case, the Hearing Committee's order made six findings in support of revocation. In order to invoke collateral estoppel on the basis of these findings, the proponent would have to demonstrate that the issues resolved in that proceeding were identical to the issues to be adjudicated in the civil proceeding so as to preclude relitigation of each particular issue. The administrative findings all were grounded upon Education Law § 6530 as the statutory predicate for revocation. Section 6530 sets forth a listing of some 47 definitions of professional misconduct. Of the six formal findings, three clearly were for record keeping violations which, alone, would have been a basis for revocation, and which, notably, are not germane to the present civil action. Of the remaining three findings, the fifth, citing to Education Law § 6530 (9) (a), was expressly predicated on defendant having been convicted of a crime under New York law—sodomy. This finding necessarily must be vacated in view of the reversal and defendant's subsequent acquittal of the sodomy charge. Obviously, then, that issue is unavailing for purposes of collateral estoppel. This leaves two remaining findings (the first and second findings) by the Medical Board. The first finding, that defendant engaged in professional misconduct by evincing moral unfitness in his practice of medicine, was based on the claim of improper sexual contacts, and also on falsification of medical records. It thus appears that the finding of professional misconduct was predicated on two distinct wrongdoings and not solely on "assault and battery," in contrast with the present litigation.

This leaves only the second finding, referencing Education Law § 6530 (31), that defendant had harassed, abused or intimidated plaintiff. The issue before the Medical Board

concerned the inappropriateness of the alleged contact and the implicit violation of a relationship of trust rather than whether civil claims, requiring specific acts and mental states bearing on the element of intent necessary for the civil causes of action, were satisfied.

It bears repeating that the Hearing Committee, in relevant part, found only that defendant "engaged in professional misconduct by reason of engaging in conduct in the practice of medicine that evidences moral unfitness," referencing the sexual contact set forth in the hearing record. That is not a finding that defendant, by a preponderance of the evidence, acted with the requisite intent necessary for the torts, presently alleged. It also bears repeating that on this, the Hearing Committee issued a split vote.

The dissent properly notes the distinction between the offensive and defensive use of collateral estoppel, and correctly observes that *David* involved the latter, but the distinction does not impede the force of the basic equitable principles articulated in that case or their applicability to the present circumstances. Although I would not gainsay that issue preclusion might be appropriate as between administrative findings and civil actions under appropriate circumstances, this is not such a case. Rather, an equitable doctrine is being used to reach inequitable and, potentially, juridically inconsistent results. This allows for an unsettling precedent, in which purportedly aggrieved patients may use disciplinary proceedings, lacking in the full panoply of discovery and procedural safeguards codified in our civil procedure law, to trump the professionally licensed defendant's recourse to a defense against civil claims in a civil trial. Especially in view of the peculiar procedural history of this case, the present defendant should have his day in court.

Accordingly, the order of the Supreme Court, Bronx County (Barry Salman, J.), entered December 14, 1998, which, insofar as appealed from as limited by the briefs, granted defendant's motion to vacate the court's prior order (same court and Justice), entered on or about April 2, 1997, granting partial summary judgment to plaintiff as to liability on her first cause of action for assault and battery, should be affirmed, without costs.

BUCKLEY, J. (dissenting). I respectfully dissent because I believe that defendant has not met his burden of proving that he lacked a full and fair opportunity to contest the facts of his

misconduct toward plaintiff. Therefore, the findings of the State Board for Professional Medical Conduct should be given preclusive effect.

The issue in this case is whether the doctrine of collateral estoppel precludes defendant from contesting liability on the first cause of action alleged in the plaintiff's complaint for assault and battery. I would answer in the affirmative, reverse, and grant plaintiff's motion for partial summary judgment for the reasons stated below.

## I.

This civil action regarding the assault and battery was commenced in October 1995. An indictment was then filed and defendant was arraigned on January 19, 1996. Thereafter, the State Board for Professional Medical Conduct of the Department of Health of the State of New York (the BPMC) served a notice of hearing and statement of charges, each dated March 26, 1996.

Gerald L. Shargel, Esq., and Jeffrey Lichtman, Esq., represented defendant in the criminal case. Lippman, Krasnow and Kelton (Michael S. Kelton, Esq.) represented defendant in this civil case. And the three above-named attorneys all represented defendant before the Medical Conduct Board, with Mr. Shargel, for the most part, cross-examining the complainant.

With respect to the accusation of sodomy, it was a question of who was more believable, the patient or the physician. There were no witnesses to the alleged act. In *People v Griffin* (242 AD2d 70, 75, *appeal dismissed* 93 NY2d 955), the dissent marshals the testimony of the complainant, the experts, the defendant and his staff to prove the defendant's guilt of the sodomy.

On the other hand, Mr. Kelton, in his opening before the Medical Conduct Board, describes the issue from the defendant's perspective:

> "Dr. Griffin's defense in this case is that he didn't do this, and the way you can determine whether or not what this patient says is so or not, is to consider her mental state and her conscious state at the time she says these things were going on.

> "We'll present evidence from a pharmacologist, who will talk about what happens when a patient undergoes a colonoscopy, and the medications that this patient had.

"And you know what he is going to tell you? He is going to tell you not only that this patient couldn't have had any recall of the events surrounding this procedure because of the medication that was used, but he is going to tell you something very interesting. He is going to tell you that it is known that these medications produce a—he calls it 'non-reality state.' That's the phrase of art that he uses, a non-reality state, and that these medications, in that non-reality state, have been known and documented to produce sexual fantasies of the very type alleged in this case, and that's in the literature and he is going to tell you that.

"We'll also have as witnesses people who work for Dr. Griffin, people who were working for him that day, and they are going to tell you not only about general practice and procedure in the office, but what they recall about this patient."

The first two days of the hearing of the Medical Conduct Board were on April 24 and May 21, 1996. Thereafter, at the trial of the criminal case, on redirect examination plaintiff testified that her prior testimony was given on April 24 and May 21, 1996, when she was cross-examined "almost the entire day for both days" by a couple of different lawyers for Dr. Griffin (*People v Griffin, supra* [record on appeal at A840-A841]).

The criminal trial commenced on May 28, 1996 with jury selection. This process continued for six days. The jury selection was completed on June 5. The following day testimony began. Plaintiff testified on June 6 and 7. Mr. Shargel's cross-examination of plaintiff continued for a period of four hours (*supra* [record on appeal at A745, A801-A802]). The criminal trial ended on June 18, 1996 after eight days of testimony. The jury convicted the defendant of sodomy in the first degree and falsifying business records in the first degree.

The BPMC hearing continued until July 18, 1996, the Committee having heard eight days of testimony. The Hearing Committee's determination and order was made October 24, 1996. The Committee consisted of three members, two of whom were physicians. It was presided over by an Administrative Law Judge. (Public Health Law § 230 [10] [e].) It was conducted pursuant to the provisions of Public Health Law § 230 (10) (c) and (f), and was a quasi-judicial hearing. The hearing transcript exceeds 1,200 pages.

The seven witnesses testifying at the hearing were (1) the complainant, Christine A. Jeffreys; (2) the respondent, Dr.

Griffin; (3) Dr. Richard Blum, a pharmacologist who testified as an expert witness on behalf of Dr. Griffin; (4) Carmen Johnson, also known as "C.J.," the office manager; (5) Bill McCue, a general office assistant; (6) Melanie Rivera, a medical assistant and receptionist; and (7) Dianne Lorens, the receptionist/secretary. Witnesses (4) through (7) are Dr. Griffin's employees who were present in his Manhattan office on the date and time of the alleged incident.

The Medical Conduct Board, by a vote of two of three members, revoked defendant's license to practice medicine. The third member recommended suspending defendant's license pending the appeal in defendant's criminal case and then referring this matter back for further action. The two members in the majority, however, concluded that the outcome in the criminal appeal would have no effect on the revocation of defendant's license for the reason that their findings of professional misconduct are sufficient to warrant the revocation without criminal convictions.

By decision and order dated April 2, 1997, the IAS court in this case granted partial summary judgment to plaintiff as to the first cause of action for assault and battery based upon the defendant's criminal convictions for sodomy in the first degree and falsifying business records in the first degree.

On April 2, 1998, with a divided bench, this Court reversed the criminal convictions, on the law, and remanded the matter for a new criminal trial (242 AD2d 70). By decision and order dated December 10, 1998, the IAS court in this case vacated the prior order granting plaintiff's motion for partial summary judgment based upon our reversal in the criminal case and on the authority of *David v Biondo* (92 NY2d 318). Thereafter, defendant was acquitted after a second criminal trial.

II.

Collateral estoppel is based upon "the sound principle that, where it can be fairly said that a party has had a full opportunity to litigate a particular issue, he cannot reasonably demand a second one." (*Schwartz v Public Adm'r of County of Bronx,* 24 NY2d 65, 69.)

In *B.R. DeWitt, Inc. v Hall* (19 NY2d 141, 143-144) the Court of Appeals approved the "offensive" use of a prior judgment, provided it involved the same issues, and was defended with full vigor and opportunity to be heard.

"[T]here seems to be no reason in policy or prece-

dent to prevent the 'offensive' use of a prior judgment. In fact, there have been cases in this court that have allowed the affirmative use of a prior judgment to establish a right to recover * * *

"In this case, where the issues, as framed by the pleadings, were no broader and no different than those raised in the first lawsuit; where the defendant here offers no reason for not holding him to the determination in the first action; where it is unquestioned (and probably unquestionable) that the first action was defended with full vigor and opportunity to be heard; * * * there is no reason either in policy or precedent to hold that the judgment in the *Farnum* case is not conclusive in the present action * * *" (*id.* at 143-144, 148).

In *Schwartz* (at 73) the Court of Appeals followed *DeWitt* in placing the burden on the moving party to prove the issue was necessary and identical, and on the defendant to show that he did not have a full and fair opportunity to defend:

"No one would contend that the doctrine of collateral estoppel should be applied rigidly. In *DeWitt* * * *, however, we indicated that the burden rests on the defendant to show that collateral estoppel should not be applied because he did not have a full and fair opportunity (*supra*, p. 148), just as the burden of showing that the issue was identical and necessarily decided rests upon the moving party. This apportionment of the burdens is both fair and necessary. Otherwise much of the value of collateral estoppel will be lost."

The IAS court's reliance on *David v Biondo* (92 NY2d 318) is misplaced. Plaintiff David sued her former dentist Biondo and also filed a grievance against him with the Office of Professional Discipline of the New York State Education Department. Charges were preferred, a hearing was held, and factfinding led to the State Board of Regents dismissing all specifications of professional misconduct.

David's civil action for damages was then dismissed in Supreme Court on grounds of collateral estoppel based upon the resolution of the disciplinary phase by the Board of Regents. This was affirmed by the Appellate Division, Second Department. The Court of Appeals reversed, reinstating David's malpractice complaint, saying that the patient's civil

action against the dentist is not concluded by the exoneration of wrongdoing in the disciplinary proceeding.

Under such circumstances the patient cannot be said to have had the kind of full and fair opportunity against the dentist that could estop her from pressing her claim against him in the law action. The instant case, on the other hand, involves the use of collateral estoppel against a medical professional found by the Board of Professional Medical Conduct to have engaged in misconduct. In misapplying *David v Biondo*, the IAS court committed reversible error.

Plaintiff in this case has met her burden of showing that the factual issue in this case is the same as the factual issue determined at the BPMC hearing, namely, whether defendant performed oral sex upon plaintiff during the medical procedure. That having been determined, the burden rests upon defendant to show that he did not have a full and fair opportunity to litigate this issue at the BPMC hearing (*Schwartz* at 73; *B.R. DeWitt, Inc. v Hall*, 19 NY2d 141, 148).

In *Ryan v New York Tel. Co.* (62 NY2d 494), the Court of Appeals applied the doctrine of collateral estoppel to give conclusive effect to the quasi-judicial determinations of administrative agencies. The facts in *Ryan* and in the case at bar are similar.

Ryan was discharged from his employ with New York Telephone Company for theft of company property, having been seen by company security investigators removing what appeared to be company property from the workplace. Ryan was charged with petit larceny and criminal possession of stolen property. Following his discharge from work, Ryan applied for unemployment insurance benefits but his application was denied on the ground that his discharge was based on his own misconduct. Ryan appealed and a hearing was held before an Unemployment Insurance Administrative Law Judge. Ryan was advised that he was entitled to have an attorney represent him at the hearing. Despite the fact that he already retained counsel for the criminal proceeding, Ryan chose instead to appear with a union representative who was familiar with such administrative hearings. After considering the testimony of witnesses, including Ryan, who were examined and cross-examined extensively, the Administrative Law Judge sustained the initial determination of ineligibility and disallowed benefits, finding that "claimant was seen * * * removing company property from the company premises" and holding that "[t]he evidence * * * establishes that claimant lost his

employment for [possessing] company property without authorization [and therefore] he lost his employment due to misconduct in connection therewith" (at 498). During the administrative proceedings, the criminal charges against Ryan were adjourned in contemplation of dismissal and then dismissed in the interest of justice.

Thereafter, Ryan commenced a civil action for false arrest, malicious prosecution, slander, wrongful discharge and resultant injuries to Ryan's wife. The defendants pleaded a defense of res judicata and collateral estoppel on the basis of the prior administrative determination denying Ryan's claim for unemployment benefits. In reversing and granting the defendants' motion to dismiss, the Court of Appeals held that, "the doctrines of *res judicata* and collateral estoppel are applicable to give conclusive effect to the quasi-judicial determinations of administrative agencies * * * when rendered pursuant to the adjudicatory authority of an agency to decide cases brought before its tribunals employing procedures substantially similar to those used in a court of law. * * * '[S]uch determinations, when final, become conclusive and binding on the courts' " (*Ryan v New York Tel.*, 62 NY2d at 499 [citations omitted]).

As can be seen from *Ryan*, (1) accusations of criminal conduct, (2) absence of counsel, (3) unavailability of disclosure afforded under the CPLR, (4) the fact that the rules of evidence are not as strictly applied in an agency hearing as they are in court, and (5) the relationship between civil and criminal proceedings are not grounds for denying issue preclusive effect to administrative proceedings. There is also nothing in *Ryan* or subsequent Court of Appeals decisions which considers the professional status of a party as a rationale for creating a special rule.

Four years after *Ryan*, the Court of Appeals decided three other cases applying the doctrine of collateral estoppel (issue preclusion) to a prior administrative determination. They are: *Allied Chem. v Niagara Mohawk Power Corp.* (72 NY2d 271, *cert denied* 488 US 1005); *Staatsburg Water Co. v Staatsburg Fire Dist.* (72 NY2d 147); and *Matter of Halyalkar v Board of Regents of State of N.Y.* (72 NY2d 261).

*Allied* made a contract with Niagara Mohawk (NM), the utility, to sell it electricity at a specified rate, but the contract also provided that either party was entitled to have the contract superseded by new rates should such be set by the Public Service Commission (PSC).

The PSC set new rates and a dispute arose as to whether Allied's type of facility fell within the new rates. NM brought a

proceeding before the Public Service Commission for a declaration that Allied should pay the new higher rates. The PSC ruled for NM. Allied then brought a contract action against NM, which then moved for and was granted summary judgment against Allied in favor of NM, finding that collateral estoppel applied to preclude Allied.

In *Allied*, the Court of Appeals (at 276) refers to the "beguilingly simple prerequisite that the administrative decision be 'quasi-judicial' in character." The Court notes that this involves "a multifaceted inquiry." (*Id.*) This amounts to a full and fair opportunity test. The Court stresses that "the expectation of the parties is important in determining the fairness" (*id.* at 277), and then appears to find that this is its principal reason for sustaining the *Allied* estoppel.

In *Staatsburg*, however, the motion based on collateral estoppel failed. The plaintiff was a water utility which regulated rates. It sold water to the defendant, a fire district, which later stopped paying because of allegedly inadequate service. The plaintiff, in need of money, applied to the PSC for a surcharge on other customers to make up for what the defendant would not pay. The PSC held a public hearing, in which interested parties, including the defendant, were "invited to participate." (72 NY2d at 151.) The defendant attended, presented no witnesses, conducted cross-examination, introduced three exhibits and filed posthearing briefs.

The PSC found that the plaintiff's service was adequate. The plaintiff then sought to have the determination made a basis for estoppel in an action it brought against the defendant in Supreme Court. The Court of Appeals ruled that *Ryan* is inapposite, in that the defendant had no direct stake in the outcome of the administrative proceeding itself.

In *Staatsburg*, the Court observes:

> "These defects all spring from the fact that the PSC's finding was, in essence, an unsolicited advisory opinion made outside the context of any complaint pending before the agency and without any direct consequences for defendant. As a result, defendant was not, in the true sense of the word, a party to the PSC proceeding—a basic prerequisite for application of the doctrine * * *. Significantly, defendant did not choose to litigate the parties' dispute before the PSC (*cf., Clemens v Apple*, 65 NY2d 746; *Ryan v New York Tel. Co.*, 62 NY2d 494, *supra*). * * *

"The point may be best illustrated by contrasting the cases in which we have given preclusive effect to nonjudicial determinations. For example, in *Ryan v New York Tel. Co.* * * *, the administrative finding given preclusive effect—that the plaintiff had illegally removed company property—resulted in the denial of plaintiff's claim for unemployment insurance benefits * * *. In each of these cases, the finding for which preclusive effect was sought was a necessary step in fixing the legal rights of a party to the proceeding, and was thus made in the context of an adjudication. The same cannot be said for the present case, because the PSC was not in a position to grant or deny defendant any relief." (72 NY2d at 153-154, 155.)

In *Ryan* and in the instant case, the administrative determination was not an unsolicited advisory opinion, made outside of the context of any complaint pending before the agency and without any direct consequences for the defendant. In both of these cases, the finding for which preclusive effect was sought was a necessary step in fixing the legal rights of a party to the proceeding, and thus was made in the context of an adjudication.

In *Halyalkar* (*supra*), the petitioner appeared voluntarily at an "informal" hearing in connection with the complaint that he had submitted insurance forms for persons he never examined. He was not represented by counsel and was unaware that he was to be questioned under oath. At the hearing he testified that he had performed the examinations at the request of and as a favor to his friend, Patel, who assisted him in completing the forms. Some of the forms produced at the hearing bore petitioner's signature but contained information filled in by someone else. It was possible, he conceded, that Patel, without his knowledge, had put before him for signature either blank forms or forms filled out for persons he had not examined.

Later, the petitioner was served with a formal administrative complaint charging him with willfully and knowingly filing nine false certifications for medical examinations not performed. The "Notice of Hearing and Notice to Enter Plea" advised petitioner that he could "enter a plea by mail." (72 NY2d at 264.) On his lawyer's advice, the petitioner decided not to contest the charges but to accept the penalty provisions which his lawyer had negotiated as a plea bargain. The consent order which the petitioner signed in his lawyer's office and

before him as a witness contained no adjudication or other determination by the Board of Medical Examiners finding the petitioner guilty of the misconduct charged in the complaint. Under the order, the petitioner received a three-month active suspension of his license, a direction to make restitution to the insurance company in the amount of $180 for the examination fees, and a fine of $2,500.

Approximately five years after the New Jersey proceedings, administrative action arising out of the same matter was commenced against the petitioner in New York. The Office of Professional Medical Conduct, relying solely on the New Jersey consent order, maintained the charges should be deemed proven under the doctrine of collateral estoppel. The Hearing Committee, however, found that the petitioner had not had "a full and fair opportunity to be heard" and to defend himself against the New Jersey charges "due to inadequate advice given to him by his then attorney" (at 265). For that reason the Committee rejected collateral estoppel. The Committee recommended that the charges be dismissed. The Board of Regents, nevertheless, accepted the contrary recommendations of the Commissioner of Health. So, by order of the Commissioner of Education, the petitioner received a one-year suspension of his license.

In its decision dismissing the petition, the Appellate Division held that its review of the proceedings showed that no evidence had been "developed at any of the hearings to establish that petitioner had the knowledge or intent necessary to sustain the charges against him." (127 AD2d 346, 349.)

The Appellate Division, however, confirmed the determination of professional misconduct on the ground that the Board of Regents and the Commissioner of Education had properly applied the doctrine of collateral estoppel. In that case, petitioner's sole objection was that collateral estoppel should not apply to this consent order.

In reversing in favor of the petitioner and finding that collateral estoppel should not apply to the consent order, the Court of Appeals held (72 NY2d at 270):

> "Under the particular circumstances here, we conclude that the issue of petitioner's guilt of knowing and willful misconduct cannot be said to have been actually litigated in the New Jersey proceeding or determined in the consent order and that, therefore, the necessary identicality of issue was not established * * *."

A fundamental principle of the doctrine of collateral estoppel is that it should not be applied rigidly. "No one would contend that the doctrine of collateral estoppel should be applied rigidly." (*Schwartz v Public Adm'r*, 24 NY2d 65, 73.) "In the *Schwartz* case and subsequent decisions it was emphasized that historically and necessarily collateral estoppel is a flexible doctrine which can never be rigidly or mechanically applied * * *. The question as to whether a party has had a full and fair opportunity to contest a prior determination cannot be reduced to a formula" (*Gilberg v Barbieri*, 53 NY2d 285, 292).

In *Halyalkar v Board of Regents* (*supra* at 268-269), the Court wrote: "Collateral estoppel is a doctrine based on general notions of fairness involving a practical inquiry into the realities of the litigation * * *; it should never be rigidly or mechanically applied."

In *Staatsburg Water Co. v Staatsburg Fire Dist.* (*supra* at 153), the Court reiterated, "[W]e have consistently emphasized that these principles are not to be mechanically applied as a mere checklist. Collateral estoppel is an elastic doctrine and the enumeration of these elements is intended as a framework, rather than a substitute, for analysis." In this context, *Stevenson v Goomar* (148 AD2d 217, *lv dismissed* 74 NY2d 945) and *Sanchez v Orozco* (178 AD2d 391) are distinguishable from the instant case.

The facts of the pretrial discovery and the availability of other background material for cross-examination differ significantly in *Stevenson v Goomar* and the instant case. In *Stevenson v Goomar*, although the plaintiff had filed a criminal complaint, no criminal charges against the defendant resulted from this filing (at 218). And, in the administrative BPMC hearing in *Stevenson v Goomar*, there was no disclosure other than notice of the charges (at 220).

In the instant case, however, because the indictment and the criminal trial took place at about the same time as the BPMC hearing, a great abundance of disclosure material was made available to defendant Griffin's attorneys. These signed statements, investigative interview reports of defendant, and the transcript of the recorded conversation between plaintiff and defendant were all provided to defendant Griffin's attorneys. In addition, other material for cross-examination of plaintiff, i.e., court papers from other proceedings, the EBT transcript of the action for wrongful eviction, the Housing Court eviction papers, the hospital records, and the bank records, were obtained and put to good use by the defendant's legal defense team.

In *Stevenson v Goomar* (at 218-219), the majority opinion concedes that "the facts and circumstances of this case can be fit into the current boundaries of the general principles of collateral estoppel applicable to administrative determinations." With this I agree. But, I disagree with the Court's statement of the law. The facts of the defendant's misconduct in that case were necessarily determined in the prior disciplinary proceeding by the BPMC Hearing Committee in a quasi-judicial hearing. During this hearing the defendant had a full and fair opportunity to litigate under the appropriate procedural safeguards and a preponderance of evidence standard of proof. Accordingly, there is no reason why the administrative findings of the Board in the final determination of the defendant's disciplinary proceedings should not have been given collateral estoppel effect (*Allied Chem. v Niagara Mohawk Power Corp.*, 72 NY2d 271, 276-277, *cert denied* 488 US 1005). For these reasons, we should not follow *Stevenson v Goomar* (*supra*).

In *Sanchez v Orozco* (178 AD2d at 393), this Court affirmed the motion court's determination, stating, among other things, "that the Regents' finding of professional misconduct should not be given preclusive effect in this action and is merely evidence (*Stevenson v Goomar*, 148 AD2d 217, *lv dismissed* 74 NY2d 945)."

The doctrine of collateral estoppel is flexible. Its application is discretionary with the trial court; a court is not required to apply the doctrine automatically, even when the formal requisites are met (*Gilberg v Barbieri, supra; Schwartz v Public Adm'r of County of Bronx, supra; Martin v Reedy*, 194 AD2d 255, 259-261; *Matter of Law Enforcement Officers Union v State of New York*, 170 Misc 2d 143, 149-150, *affd on other grounds* 229 AD2d 286; 73A NY Jur 2d, Judgments § 337, at 41). In *Sanchez*, we found that the IAS court did not abuse its discretion. In the instant case, however, we should find that the IAS court erred by misapplying *David v Biondo*.

In *Sanchez*, the occurrence of sexual conduct was not at issue, as the physician-psychiatrist freely admitted to the consensual affair between himself and the patient. The hearing panel found that the physician-psychiatrist did not commit unprofessional conduct. This finding was rejected and reversed by the Regents Review Committee. We should limit *Sanchez* to the particular facts of its case.

In his brief, defendant, for the first time, collaterally attacks the validity of BPMC Board's administrative adjudication on the basis that the inclusion of the now reversed criminal convic-

tions in its decision tainted the proceeding. This assertion, not having been raised before the IAS court, is not preserved for our review and should not be considered by us in the interest of justice. If considered, we should reject it as not relevant or material to the issue before us.

## III.

Considering whether defendant has demonstrated that he was not provided a "full and fair opportunity" to contest the issue in the prior administrative proceeding, in general the factors mentioned in the case law all relate (1) to the fullness of the opportunity to litigate the issues in the prior forum of the party proposed to be bound by the prior adjudication, and (2) to that party's incentive to fully litigate therein. The Court of Appeals in *Ryan*, *Gilberg* and *Schwartz* has mentioned such factors as the size and importance of the claim, the nature of the prior forum, the use of initiative, competence of counsel, the availability of new evidence and the foreseeability of future litigation. This same persuasive argument was made by Justice Levine in his dissent in *Stevenson v Goomar* (148 AD2d at 223-226).

The modern New York res judicata doctrine is derived from the Restatement (Second) of Judgments. It takes exactly the same approach in dealing with the application of collateral estoppel to prior administrative determinations:

> "The first consideration is procedural. The essential issue is a comparison of the quality and intensiveness of the opportunity to litigate, and the incentive to litigate, in the original litigation as compared to the opportunity and incentive in the second litigation. If the prior opportunity and incentive to litigate the claim or issue in question were substantially the same as would have existed had the matter been adjudicated in the second forum, the procedural prerequisites exist for normal application of the rules of res judicata. The comparison of procedures should focus on the practical aspects of the procedures involved and not simply on matters of form. For example, proof-taking in an administrative or arbitration tribunal may be relatively informal but may nevertheless permit the parties to present substantially the same evidence that might be adduced through the more formal procedures characteristic of courts." (Restatement

[Second] of Judgments ch 6, Introductory Note, at 265 [1982] [emphasis added].)

Examining, then, the prior proceeding by the practical realities of defendant's full and fair opportunity in the disciplinary proceeding (in order to test the issue of misconduct), the record clearly establishes that he vigorously contested the charges (through introducing evidence in his defense and cross-examination of the opposing witness) and fully participated and was represented by competent counsel at all stages. If anything, his incentive to litigate the issues was greater in the prior proceeding, where his license to practice medicine was at stake, than it is in the instant personal injury damages case. And when the disciplinary charges against defendant were pending, the instant case was actually known to exist. Moreover, in the disciplinary proceeding, defendant attacked plaintiff's credibility on the basis of her having already brought this civil action. Nor has defendant suggested that any new evidence in his defense exists which was not available to him at the prior proceeding. Therefore, I believe that defendant has not met his burden of showing that he lacked a full and fair opportunity to contest the facts of his misconduct toward plaintiff and that the findings of the Board should, therefore, be given preclusive effect.

For these reasons, I respectfully dissent.

WILLIAMS, P.J., NARDELLI and ANDRIAS, JJ., concur with TOM, J.; BUCKLEY, J., dissents in a separate opinion.

Order, Supreme Court, Bronx County entered December 14, 1998, affirmed, without costs.