NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

JOHN ACCURSIO, *Plaintiff/Appellant*,

*v.*

TREE HOUSE LABS, LLC, et al., *Defendants/Appellees*.

No. 1 CA-CV 24-0298
FILED 01-09-2025

Appeal from the Superior Court in Maricopa County
No. CV2023-091725
The Honorable Dewain D. Fox, Judge

**VACATED AND REMANDED**

COUNSEL

Fortify Legal Services, Mesa
By Kyle O'Dwyer
*Counsel for Plaintiff/Appellant*

Gordon Rees Scully Mansukhani, LLP, Phoenix
By Chanel Rizk, Jill J. Ormond
*Counsel for Defendants/Appellees*

---

**MEMORANDUM DECISION**

Judge Daniel J. Kiley delivered the decision of the Court, in which Presiding Judge Michael J. Brown and Judge D. Steven Williams joined.

---

**K I L E Y**, Judge:

¶1        John Accursio ("Accursio"), an out-of-state attorney, sued opposing counsel after counsel referred him to the State Bar of Arizona (the "Bar") for allegedly engaging in the unauthorized practice of law here. The superior court dismissed Accursio's claims under Arizona Rule of Civil Procedure 12(b)(6). Because Accursio's complaint stated potentially viable claims for relief against opposing counsel, we vacate the dismissal and remand for further proceedings.

**FACTS AND PROCEDURAL BACKGROUND**

¶2        The complaint sets forth the following allegations which, for purposes of this appeal, we accept as true. *See Chalpin v. Snyder*, 220 Ariz. 413, 418, ¶ 18 (App. 2008).

¶3        Ashley Vogel ("Vogel") and Christopher Townsend ("Townsend") entered an agreement in 2020 that Vogel would develop a business plan to establish and operate a cannabis testing laboratory in exchange for equity in the entity that was formed using her business plan. Townsend and Andrew Phillips ("Phillips") used the business plan Vogel developed to form Tree House Labs ("THL"). Vogel's interest in THL was placed in a limited liability company she formed called AMA Capital Laboratories I LLC ("AMA Labs").

¶4        A dispute developed between Vogel and AMA Labs, on one hand, and Townsend, Phillips, and others, on the other hand, regarding ownership interests in THL and access to THL's financial documents. Townsend, THL, and an entity called 28 Gorilla ("28G") sued Vogel and AMA Labs in Maricopa County Superior Court Case No. CV2021-019322 (the "Underlying Case"). The plaintiffs in the Underlying Case were represented by Clark Wu ("Wu") and his law firm, BB Group, LLC ("BBG"). Accursio, an attorney licensed in New York and Washington, D.C., represented Vogel and AMA Labs, with two Arizona attorneys serving as co-counsel.

**¶5** During the course of the proceedings, Accursio informed Wu and BBG that he believed that their representation of the plaintiffs in the Underlying Case violated the conflict-of-interest provisions of the Arizona Rules of Professional Responsibility (the "Ethical Rules"). *See* Ariz. R. Sup. Ct. 42.

**¶6** The plaintiffs voluntarily dismissed the Underlying Case in July 2022.

**¶7** On behalf of Vogel and AMA Labs, Accursio, along with local co-counsel, requested certain business records from THL. Wu sent them a non-disclosure agreement, telling them that no records would be disclosed until they signed it. Accursio revised the non-disclosure agreement and sent it back to Wu. In response, Wu took the position that Accursio had engaged in the practice of law in Arizona without being licensed to do so.

**¶8** Accursio and Wu each contacted the Bar about the other's purportedly improper conduct. Following his communications with the Bar, Accursio filed a bar charge against Wu.[1] Wu then filed a bar charge against Accursio, alleging that he had engaged in the unauthorized practice of law ("UPL") in Arizona.

**¶9** Several months later, the Bar dismissed the UPL bar charge against Accursio after concluding that it could not prove by the requisite clear and convincing evidence that his conduct constituted the unauthorized practice of law. In the interim, however, Accursio received an offer of employment from a New York law firm. When Accursio informed the law firm of the pending UPL bar charge against him, the law firm rescinded its offer.

**¶10** Vogel, her spouse, AMA Labs, and Accursio then brought this case against THL, Townsend, Phillips, 28G, Wu, BBG, and others, alleging various claims, including breach of contract, breach of fiduciary duty, and declaratory relief. As relevant here, Accursio asserted, in Count 20 of the complaint, a claim against Wu for wrongful institution of civil proceedings ("WICP") arising out of the UPL charge Wu filed against him, as well as a claim in Count 21 against BBG and BBG attorneys Justin Brandt ("Brandt") and Mukunda Shanbhag ("Shanbhag") for aiding and abetting Wu's

---

[1] A "charge" is a communication to the Bar alleging either that a person authorized to practice law in Arizona has violated one or more of the Ethical Rules or that a person has practiced law in this state despite not being authorized to do so. Ariz. R. Sup. Ct. 46(h)(6), 75(b)(3).

allegedly tortious conduct. The complaint alleged that Accursio had "not engaged in the unauthorized practice of law" and that Wu's UPL charge was "without any supporting evidence" or "probable cause." Wu filed the UPL bar charge against Accursio, the complaint alleged, "in retaliation" for the bar charge Accursio filed against him.

¶11 Wu, BBG, Brandt, and Shanbhag (collectively, the "BBG Defendants") moved to dismiss Counts 20 and 21. The BBG Defendants argued, first, that Accursio failed to state a claim for WICP because applicable rules establish an "absolute immunity" for "communications with the State Bar relating to lawyer misconduct." In the alternative, the BBG Defendants argued that attorney discipline proceedings are not "civil" in nature, and therefore cannot give rise to a WICP claim. Finally, they argued that because aiding-and-abetting is a theory of secondary liability, the failure of Accursio's WICP claim necessarily dooms his aiding-and-abetting claim as well.

¶12 The superior court rejected the BBG Defendants' claim to immunity from liability for filing a bar charge, but nonetheless granted the BBG Defendants' motion to dismiss Counts 20 and 21. In so ruling, the court held that Accursio failed to state a WICP claim because the Bar dismissed Wu's UPL charge and so the "proceeding" required to establish a claim for wrongful institution of civil proceedings never took place. The court further held that because aiding-and-abetting is "a theory of secondary liability," Accursio's failure to "state a viable claim for the primary tort of [WICP]" required the dismissal of the aiding-and-abetting claim as well.

¶13 Accursio moved for reconsideration, asserting the BBG Defendants' motion to dismiss did not raise the argument that no "proceeding" took place to support a WICP claim and that, in any event, Wu's UPL charge did in fact result in a "proceeding" before the charge was dismissed. In support of his motion for reconsideration, Accursio attached copies of his correspondence with Bar counsel, Bar counsel's request for a protective order to seal certain confidential information, and the presiding disciplinary judge's order granting Bar counsel's request.

¶14 The court ordered further briefing, after which it denied Accursio's motion for reconsideration and entered final judgment under Arizona Rule of Civil Procedure 54(b) dismissing Counts 20 and 21. Accursio timely appealed. We have jurisdiction. *See* Ariz. Const. art. 6, § 9; A.R.S. §§ 12-120.21(A)(1), -2101(A)(1).

## DISCUSSION

**¶15**        Accursio argues that the superior court erred in dismissing Counts 20 and 21 of the complaint, asserting that their allegations were sufficient to state claims for WICP and aiding-and-abetting. "[T]he discipline process alleged to have occurred here" constituted a "proceeding" for purposes of a WICP claim, he maintains, and the court erred in concluding otherwise. And because a plaintiff can assert an aiding-and-abetting claim even if "the primary tortfeasor" is not "a defendant in the action," he contends, his aiding-and-abetting claim against BBG, Brandt, and Shanbhag "is still viable" even if his WICP claim is not.

**¶16**        A claim for WICP has "five elements: that the defendant (1) instituted a civil action which was (2) motivated by malice, (3) begun or maintained without probable cause, (4) terminated in [the] plaintiff's favor, and (5) damaged [the] plaintiff." *Wolfinger v. Cheche*, 206 Ariz. 504, 508-09, ¶ 23 (App. 2003) (cleaned up). A claim for aiding-and-abetting tortious conduct has three elements: "(1) the primary tortfeasor must commit a tort that causes injury to the plaintiff; (2) the defendant must know that the primary tortfeasor's conduct constitutes a breach of duty; and (3) the defendant must substantially assist or encourage the primary tortfeasor in the achievement of the breach." *Wells Fargo Bank v. Ariz. Laborers, Teamsters & Cement Masons Local No. 395 Pension Tr. Fund*, 201 Ariz. 474, 485, ¶ 34 (2002) (citation omitted).

**¶17**        A complaint that does not allege all elements of a claim is subject to dismissal. *See Maldonado v. S. Pac. Transp. Co.*, 129 Ariz. 165, 166-67 (App. 1981) ("The test to be applied in resolving" a motion to dismiss "is whether the complaint, taken in the light most favorable to appellant, is sufficient to constitute a valid claim."); *cf. Aubuchon v. Brock*, 2015 WL 2383820 at *10, ¶ 38-40 (Ariz. App. May 14, 2015) (mem. decision) (reversing dismissal of claims for breach of contract and breach of the implied covenant of good faith and fair dealing because plaintiffs' proposed amended complaint "alleged sufficient facts to support all of the elements" of those claims). This court reviews the dismissal of a complaint for failure to state a claim de novo, and will affirm only if, as a matter of law, the plaintiff would not be entitled to relief under any interpretation of the facts alleged in the complaint. *Sanchez v. Maricopa Cnty.*, 256 Ariz. 441, __, ¶ 7, 541 P.3d 566, 568 (App. 2023).

**¶18**        Authority to regulate the practice of law in this state is vested in the Arizona Supreme Court. *Scheehle v. Justices of the Sup. Ct. of Ariz.*, 211 Ariz. 282, 290, ¶ 29 (2005). The Court's authority permits it to exercise

jurisdiction over those engaged in both the authorized and unauthorized practice of law in Arizona. Ariz. R. Sup. Ct. 31(a). The "practice of law," whether authorized or unauthorized, includes "negotiating legal rights or responsibilities on behalf of a specific person or entity" and "preparing a document . . . intended to affect or secure" those rights. Ariz. R. Sup. Ct. 31(b)(4), (5).

¶19        The Court has adopted rules governing the practice of law by both those who are admitted to practice in Arizona and those who are not. The practice of law by members of the Bar or those otherwise authorized to practice in this state is governed by Rules 41 through 74 of the Rules of the Supreme Court of Arizona (the "Rules"). The practice of law by non-members of the Bar who are not authorized to practice in this state is governed by Rules 75 through 80.

¶20        Under Rule 48(*l*), filing a bar charge alleging professional misconduct by a member of the Bar is "absolutely privileged conduct, and no civil action predicated thereon may be instituted against any complainant." Ariz. R. Sup. Ct. 48(*l*).[2] Communications to the Bar alleging

---

[2] Rule 48(*l*) reads, in its entirety,

Communications to the court, state bar, committee, presiding disciplinary judge, acting presiding disciplinary judge, hearing panel members, settlement officers, mediators, the client protection fund, the peer review committee, the fee arbitration program, the committee on the Rules of Professional Conduct, participants in an approved member assistance program including those seeking assistance and those seeking to provide assistance, participants or staff of a State Bar law office or practice management assistance programs, state bar staff relating to lawyer misconduct, lack of professionalism or disability, and testimony given in the proceedings shall be absolutely privileged conduct, and no civil action predicated thereon may be instituted against any complainant or witness. Members of the board, members of the committee, the presiding disciplinary judge, hearing panel members, the peer review committee, client protection fund trustees and staff, fee arbitration committee arbitrators and staff, the Committee on the Rules of Professional Conduct, participants in an approved member assistance program, including those seeking assistance and those seeking to provide assistance, or participants or staff in a State Bar law office or practice management assistance program, state bar

that a non-member has engaged in the unauthorized practice of law, too, are "absolutely privileged," and "no civil action predicated thereon may be instituted against any complainant." Ariz. R. Sup. Ct. 80(a)(6).[3]

**¶21** The BBG Defendants maintain that the court correctly dismissed Accursio's WICP and aiding-and-abetting claims, asserting, first, that both claims were "predicated entirely on [Wu's] bar charge" and Rule 48(*l*) "clearly states that a cause of action predicated exclusively on privileged communications made to [the Bar] cannot stand."

**¶22** The BBG Defendants did not argue before the superior court that Rule 48(*l*) establishes a privilege for filing a charge with the Bar. Instead, they argued that Rule 48(*l*) establishes an *immunity* from liability. Immunity and privilege are distinct concepts. *See Goldman v. Sahl*, 248 Ariz. 512, 522-23, ¶ 31 (App. 2020) (recognizing that a privilege is not an immunity); *see also Maggard v. Kinney*, 576 S.W.3d 559, 560 (Ky. 2019) ("A privilege is not synonymous with or equivalent to immunity because it does not relieve the holder of the burdens of litigation or even, necessarily, the imposition of liability."). Nevertheless, because a judgment dismissing a claim may be affirmed for any reason supported by the record, *Logerquist v. Danforth*, 188 Ariz. 16, 18 (App. 1996), we address the BBG Defendants' "privilege" argument.

**¶23** In *Goldman*, the court addressed whether claims for defamation and abuse of process can be predicated on the filing of a bar charge. The *Goldman* court rejected the defendant's argument that Rule 48(*l*) created an absolute immunity from liability. 248 Ariz. at 522, ¶ 30. Instead, the court held that Rule 48(*l*) created a privilege that "applies to the content

---

staff, and court staff shall be immune from suit for any conduct in the participation in the program.

[3] Rule 80(a)(6) reads, in its entirety,

Communications to the court, state bar, bar counsel, unauthorized practice of law counsel, volunteer bar counsel, or investigators relating to alleged unauthorized practice of law, and testimony given in the proceedings shall be absolutely privileged conduct, and no civil action predicated thereon may be instituted against any complainant or witness. Board members, bar counsel, unauthorized practice of law counsel, volunteer bar counsel, investigators, and state bar and court staff shall be immune from suit for any conduct in the course of their official duties.

of the communication" to the Bar. *Id.* The *Goldman* court noted that the common law privilege for statements made during the course of a judicial proceeding "does not shield the participant from liability for his or her improper litigation-related conduct." *Id.* at 526, ¶¶ 45-46 (citing Restatement (Second) of Torts § 586 (1977)). Because the "anti-abrogation clause" of the Arizona Constitution protects claims "recognized at common law," the *Goldman* court held, Rule 48(*l*) cannot be interpreted in a manner that would abrogate an "injured party's rights of action" based on the conduct of submitting a bar charge. *Id.* at 524, ¶¶ 37, 39. Accordingly, the *Goldman* court concluded that Rule 48(*l*) does not shield a complainant to the Bar from "a right of action premised on improper litigation conduct." *Id.* at 522, ¶ 30.

¶24 If Accursio's WICP claim were based solely on the content of the UPL charge that Wu filed, then we would agree that Rule 48(*l*) as interpreted by *Goldman* would bar the claim. The allegations in support of the WICP claim, however, are not based on the content of the UPL charge. Instead, the complaint alleges that Accursio did not engage in the unauthorized practice of law and that Wu filed a charge making that allegation without probable cause and in retaliation for the bar charge Accursio filed against him. Because the WICP claim as alleged in the complaint is not based on the content of the UPL charge, Rule 48(*l*) does not bar the claim.

¶25 The BBG Defendants next argue that "disciplinary proceedings are not civil proceedings" and, therefore, that disciplinary proceedings cannot, as a matter of law, support a WICP claim. In support of their position, they point to Rule 48(a), which provides that "[d]iscipline and disability proceedings are neither civil nor criminal, but are sui generis." Ariz. R. Sup. Ct. 48(a).

¶26 The viability of a litigation misconduct claim does not, however, turn on the characterization of the litigation as "civil," "criminal," or something else. *See Carroll v. Kalar*, 112 Ariz. 595, 596 (1976) (noting that "[t]he essential elements which must be shown to establish a malicious prosecution action" include "the institution of *a proceeding*") (emphasis added). As the *Goldman* court recognized, the "improper litigation conduct torts" of WICP, malicious prosecution, and abuse of process are "cousin[s]" which are all intended "to cover inappropriate uses of the judicial machinery." 248 Ariz. at 524, ¶ 36 (cleaned up). The unique nature of the attorney disciplinary process does not preclude a claim for litigation misconduct arising out of the misuse of that process. *See Goldman*, 248 Ariz. at 529, ¶ 57 (rejecting defendant's argument that attorney's abuse-of-

process claim "cannot stand . . . because a disciplinary proceeding is neither criminal nor civil").

¶27 When considering litigation misconduct claims, Arizona courts have traditionally looked to the Restatement (Second) of Torts ("Restatement") for guidance. *See, e.g., Bradshaw v. State Farm Mut. Auto. Ins. Co.*, 157 Ariz. 411, 417 (1988) (relying on Restatement § 675 in explaining "probable cause" element of malicious prosecution claim); *Frey v. Stoneman*, 150 Ariz. 106, 110 (1986) (analyzing Restatement § 674 in determining "probable cause" element of malicious prosecution claim). Section 682 of the Restatement recognizes that "[o]ne who uses a legal process, whether criminal or civil, against another primarily to accomplish a purpose for which it is not designed, is subject to liability to the other for harm caused by the abuse of process." Restatement (Second) of Torts § 682 (1977). Section 680 of the Restatement makes clear that the term "civil proceeding" includes a proceeding before an administrative board. Restatement (Second) of Torts § 680 (1977) (referring to "the initiation . . . of civil proceedings . . . before an administrative board"). The Restatement thus establishes that one who initiates an administrative process to accomplish an improper purpose is liable for the resulting harm. A WICP claim arising out of the alleged misuse of the attorney disciplinary process is consistent with the Restatement, and we decline to interpret Rule 48(a) in a contrary manner.

¶28 The BBG Defendants next argue that the court correctly dismissed the WICP charge because the Bar dismissed the UPL charge Wu filed and, therefore, the requisite "proceeding" never took place. In support of their position, they cite *Goldman*, in which the court held that the attorney "failed to state a claim for relief" because the Bar "dismissed the charge before a proceeding" was instituted. 248 Ariz. at 530, ¶ 64. Because the Bar dismissed the charge at the investigation stage, the *Goldman* court held, "there was no process, nor was there a proceeding to sustain a claim for [WICP]." *Id.*

¶29 Here, in dismissing Counts 20 and 21, the court noted that it "is bound by the holding in *Goldman*." For two reasons, however, *Goldman* is distinguishable, and thus not controlling here.

¶30 First, the bar charge filed against the plaintiff attorney in *Goldman* alleged that he had made misrepresentations to opposing counsel and attempted to interfere with opposing counsel's relationship with their client. 248 Ariz. at 518, ¶¶ 9-10. As noted in *Goldman*, such claims are reviewed under Rule 55. *See id.* at 530, ¶ 61. Rule 55(a) provides that, upon

receiving a bar charge against a member of the Bar alleging, *inter alia*, unprofessional conduct, Bar counsel shall conduct an evaluation, after which it may "dismiss the matter." Ariz. R. Sup. Ct. 55(a)(2)(A). Alternatively, Bar counsel may "resolve the matter" through "a diversion agreement or . . . other appropriate action," or, if warranted, may refer the matter for a screening investigation under Rule 55(b). Ariz. R. Sup. Ct. 55(a)(2)(B), (C). Rule 55(b), in turn, requires Bar counsel to notify the respondent of the allegation and afford the respondent an opportunity to respond. Ariz. R. Sup. Ct. 55(b). Rule 58 provides that if discipline is warranted and the matter cannot be resolved by agreement, Bar counsel initiates "[f]ormal disciplinary proceedings" by "filing a complaint." Ariz. R. Sup. Ct. 58(a). Read together, Rules 55 and 58 indicate that no "proceeding" occurs if a bar charge is dismissed after an initial evaluation under Rule 55(a), with no other action being taken.

¶31        Wu's bar charge against Accursio, however, alleged that he committed UPL, a matter that is governed by Rules 78 through 80. Rule 78(a) provides that "[*a*]*n unauthorized practice of law proceeding commences upon receipt* by [the Bar] *of a charge* against a respondent." Ariz. R. Sup. Ct. 78(a) (emphasis added). Under the plain language of Rule 78(a), a "proceeding" against Accursio commenced as soon as the Bar received Wu's UPL charge. Unlike the circumstances found in *Goldman*, therefore, a "proceeding" was, in fact, initiated here that could support a claim for litigation misconduct.

¶32        The BBG Defendants argue that Rule 78 is irrelevant here because the Bar handled Wu's UPL charge under Rule 55, which governs the practice of law by members of the Bar. As support for this assertion, they cite the letter Bar counsel sent to Accursio on September 19, 2022, which Accursio attached as an exhibit to his motion for reconsideration. The letter states in part that, based on Wu's bar charge and Accursio's initial response, "a screening investigation is being undertaken pursuant to Rule 55(b)." According to the BBG Defendants, Bar counsel's letter establishes the Bar's "clear written intention . . . to apply Rule 55," not Rule 78, and Accursio "cannot recast [the Bar's] investigation after it has concluded."

¶33        Rule 75 allows Bar counsel to institute UPL proceedings against non-members of the Bar under Rule 47 through 60 as well as Rules 75 through 80. *See* Ariz. R. Sup. Ct. 75(a) ("Proceedings against non-members . . . may also be instituted pursuant to Rules 47 through 60, and such proceedings may be concurrent with proceedings under [Rules 75 through 80]."). The manner in which the Bar handled Wu's UPL charge, however, does not overcome the plain text of Rule 78, which expressly

provides that a "[UPL] proceeding commences upon receipt . . . of a charge[.]" *See* Ariz. R. Sup. Ct. 78(a). To hold that the viability of Accursio's claims against the BBG Defendants turns on the Bar's decision about which procedural rules to apply would be to hold, in effect, that Accursio's right of action against the BBG Defendants can be extinguished by the Bar's unilateral actions. We are aware of no authority for such a proposition. *Cf. David v. Biondo*, 703 N.E.2d 261, 262 (N.Y. 1988) (administrative board's dismissal of misconduct allegations did not bar complaining patient's malpractice claim against dentist, since patient "enjoyed no legal or practical opportunity to litigate her civil law grievances within the framework of the [disciplinary] proceeding"); *Vazeen v. Sir*, M2018-00333-COA-R3-CV, 2018 WL 6419134 at *1 (Tenn. Ct. App. Dec. 5, 2018) (holding that administrative board's decision "to dismiss an ethical complaint does not bar" the client "from bringing a malpractice . . . claim" against former attorney).

¶34         The second factor that distinguishes *Goldman* is that nothing in that case indicates that the bar charge resulted in motion practice or any other litigation activity. On the contrary, the *Goldman* court analogized the bar charge in that case to "an individual making a police report and allowing a prosecutor" to "determin[e] whether to proceed." 248 Ariz. at 530, ¶ 63. "[B]ecause Bar [c]ounsel dismissed the charge," the *Goldman* court held, "there was no [judicial] process." *Id.* at ¶ 64.

¶35         Here, by contrast, the Bar did not dismiss Wu's bar charge after its initial evaluation under Rule 55(a). Instead, the Bar conducted a screening investigation under Rule 55(b), during which it twice asked Accursio to provide information in response to the bar charge. At Accursio's behest, the Bar sought and obtained a protective order from the presiding disciplinary judge to seal sensitive information contained in Accursio's responses. The litigation activity that occurred here distinguishes this case from *Goldman* and establishes that the Bar's UPL investigation here was a "proceeding." *See* Black's Law Dictionary (12th ed. 2024) (defining "proceeding" to include both "the business conducted by a court or other official body" and "all acts and events between the time of commencement [of a lawsuit] and the entry of judgment"; "[The word 'proceeding'] is more comprehensive than the word 'action,' but it may include in its general sense all the steps taken or measures adopted in the prosecution or defense of an action.") (cleaned up).

¶36         Numerous courts have recognized that, while a "mere police investigation" may not be a "proceeding," an investigation is a "proceeding" if conducted by an administrative agency "with some

11

adjudicative power, or with the power to enhance their investigations through the issuance of subpoenas or warrants." *United States v. Kelley*, 36 F.3d 1118, 1127 (D.C. Cir. 1994) (citing cases); *see also United States v. Kirst*, 54 F.4th 610, 621 (9th Cir. 2022) (affirming pilot's conviction for obstructing a pending proceeding by making false statements to investigators about cause of plane crash; noting that because investigating agency "had both subpoena power and the power to compel testimony under oath," its investigation was a "proceeding" for purposes of the obstruction statute).

**¶37** The Rules authorize Bar counsel investigating a UPL allegation to seek information by subpoena and to compel the respondent to give testimony at a deposition. Ariz. R. Sup. Ct. 78(b)(3), (4). If the allegation is substantiated, Bar counsel may seek injunctive and other relief in superior court. Ariz. R. Sup. Ct. 76(b). Because Accursio was required to respond to requests for information by a regulatory body with authority to compel his cooperation had he resisted, the Bar's UPL investigation was a "proceeding" for purposes of a WICP claim. *See United States v. Pac. Gas & Elec. Co.*, 153 F.Supp.3d 1076, 1079-81 (N.D. Cal. 2015) (holding that administrative investigation of explosion caused by ruptured gas line was a "proceeding" for purposes of obstruction statute; rejecting defendant's argument that "a mere [] investigation" is not a "proceeding," the court noted that the agency both had "the power to enhance its investigations through the issuance of subpoenas" and took "procedural steps" that included, *inter alia*, making "numerous requests for information and documents") (cleaned up).

**¶38** Because Wu's UPL bar charge initiated the requisite "proceeding," we hold that Accursio's complaint stated a claim for WICP. Accordingly, we vacate the dismissal of Accursio's WICP claim. And since the dismissal of the aiding-and-abetting claim was predicated on the dismissal of the WICP claim, we vacate the dismissal of that claim as well.

**CONCLUSION**

**¶39** We vacate the judgment of dismissal entered under Arizona Rule of Civil Procedure 54(b) and remand for further proceedings consistent with this decision.

